**Affirmed and Majority and Dissenting Opinions filed January 30, 2014.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-12-00279-CV

---

### RSL FUNDING, LLC, Appellant

### V.

### CHAVEZE D. PIPPINS, DANIEL P. MORRIS, DONNA M. O'BRIEN, METROPOLITAN LIFE INSURANCE COMPANY, METLIFE INSURANCE COMPANY OF CONNECTICUT & METLIFE INVESTORS USA INSURANCE CO., Appellees

**On Appeal from the County Civil Court at Law No. 4
Harris County, Texas
Trial Court Cause No. 994875**

---

## O P I N I O N

RSL Funding, LLC brings this interlocutory appeal from the trial court's ordering the stay of arbitration proceedings and denying the stay of related trial proceedings. The underlying dispute concerns rights related to certain annuities issued by Metropolitan Life Insurance Company, MetLife Insurance Company of

Connecticut, and MetLife Investors USA Insurance Co. (collectively, the MetLife parties) to Chavese D. Pippins, Daniel P. Morris, and Donna O'Brien (collectively, the Individuals). The Individuals subsequently executed assignment agreements with RSL concerning their rights in the annuities. While the original investment contracts between the MetLife parties and the Individuals did not contain arbitration clauses, the assignment agreements between the Individuals and RSL did contain such clauses. Claims, counter-claims, and cross-claims were pleaded among the parties to the litigation. When RSL attempted to enforce the arbitration clause and stay the trial proceedings, the trial court denied RSL's motion and instead entered an order staying the arbitration. RSL now complains this was error. We affirm.

## *Background*

Each of the Individuals signed annuity contracts with the MetLife parties and subsequently entered contracts to assign their annuity rights to RSL.[1] The assignment agreements between RSL and the Individuals each contained an arbitration clause stating broadly that any disputes under the agreements would be subject to arbitration if one of the parties so demanded. These clauses stated:

> Disputes under this Agreement of any nature whatsoever including but not limited to those sounding in constitutional, statutory, or common law theories as to the performance of any obligations, the satisfaction of any rights and/or the enforceability hereof . . . shall be resolved through demand by any interested party to arbitrate the dispute in accordance with the laws of the State of Texas (including the Federal Arbitration Act which shall be controlling) . . . . The parties hereto agree that the issue of arbitrability shall likewise be decided by the arbitrator, and not by any other person. That is, the question of whether a dispute itself is subject to arbitration shall be

---

[1] O'Brien had two annuity contracts with the MetLife parties which she agreed to assign to RSL; Pippins and Morris had one contract each.

2

decided solely by the arbitrator and not, for example by any court. In so doing the intent of the parties is to divest any and all courts of jurisdiction in disputes involving the parties, except for the confirmation of the award and enforcement thereof.

The agreements also contained provisions permitting RSL to assign the right to purchase the annuities to a "designated assignee." Each of the Individuals thereafter signed Bills of Sale conveying their annuity rights to RSL Special-IV, Ltd., which was apparently RSL's designated assignee.[2]

When the Metlife parties balked at recognizing RSL or RSL Special-IV's rights as payees, RSL filed a lawsuit on June 20, 2011, in a Harris County court-at-law, naming the MetLife parties and the Individuals as defendants. The procedural history of this relatively simple case is rather lengthy and complex. Because that history is integral to our analysis, we will recount it in some detail.[3]

In its original petition, RSL alleged it received assignments from each of the Individuals of their respective annuity rights, but the MetLife parties refused to redirect the payments to RSL or its assignee. RSL sought a declaratory judgment that the assignments from the Individuals were enforceable and binding on all parties and alleged the MetLife parties breached the respective annuity contracts by not paying the amounts due to RSL or its assignee. RSL attached to its petition affidavits from each of the Individuals stating that they had sold their annuity rights to RSL's assignee, RSL Special-IV.

In an amended petition filed on September 16, RSL alleged that it was a "special servicing agent" for RSL Special-IV and Marla B. Matz, and "[i]n its

___

[2] The bills of sale apparently do not include arbitration clauses.

[3] As will be discussed below, a central question in this appeal is whether RSL waived its right to demand arbitration by substantially invoking the litigation process to the Individuals' detriment or prejudice.

3

capacity as plaintiff, [it was] representing the interests of RSL Special-IV, Ltd. and its designee Marla B. Matz. RSL further explained that "[i]n an effort to accommodate MetLife," which had allegedly asserted that only natural persons could own the annuities, "Marla B. Matz, a natural person, has been designated as the owner of the three annuities by RSL Special-IV, Ltd. and RSL Funding, LLC as special agent for RSL Special-IV, Ltd." RSL further sought a declaration that RSL Special-IV or Matz owned "the Pippins, Morris, and O'Brien annuities" and had the exclusive rights to receive the monthly payments. Also on September 16, RSL moved the court to require the MetLife parties "to deposit annuity funds into the Court's registry funds."[4]

On September 23, the MetLife parties filed a "Counterclaim and Cross-Claim for Interpleader." In this pleading, the MetLife parties requested permission to deposit the annuity payments into the court's registry as the payments became due and sought declaratory judgment concerning which party or parties possessed the right to receive the payments. The MetLife parties designated their pleading as a counterclaim against RSL and as a cross-claim against the Individuals.

On September 27, 2011, RSL filed a motion to compel arbitration against Pippins, alleging that "contrary to his contractual obligation," "Pippins refused to cooperate . . . and informed RSL that he intended to cancel the transaction and not cooperate with assignment related issues." RSL further accused Pippins of "materially breaching his contracts with RSL" and requested that the trial court enter "an order compelling Pippins to participate in arbitration."[5]

---

[4] In the alternative, RSL suggested the court direct the MetLife parties to make the payments to Matz. The Individuals filed a motion requesting the funds be disbursed to Matz, but the trial court denied this motion.

[5] A letter appears in the record from Pippins to one of the MetLife parties requesting that he again be named the "Payee and Beneficiary" of his annuity and that payments again be made

4

On October 4, the trial court entered an order directing the MetLife parties to deposit into the court's registry all annuity payments they were then holding and deposit future payments when and as they came due. Although the court referenced both RSL's motion to require the MetLife parties to make such deposits and the MetLife parties' own "motion for interpleader relief," the court stated that it was entering the order to deposit *sua sponte*. Thereafter, the parties began the discovery process. MetLife and RSL exchanged discovery requests and deposed each others' representative, and the Individuals depositions were either taken or at least noticed.

On November 10, the Individuals filed cross-claims against the MetLife parties, alleging bad faith, breach of fiduciary duty, and breach of contract. On November 28, the Individuals filed a counterclaim against RSL for breach of contract. Specifically, the Individuals alleged that neither RSL nor RSL Special-IV paid the Individuals the lump sums required under their agreements in exchange for the annuity rights conveyed to RSL Special-IV and subsequently Matz. The Individuals further claimed severe financial distress and an inability to pay their own living expenses as a direct result of the breach of the agreements.[6] Because the Individuals claimed damages exceeding the jurisdictional limits of the county court at law in which RSL had originally filed suit, they also filed a motion to transfer the case to a Harris County district court. The trial court denied the motion to transfer.

The Individuals nonsuited all of their claims on November 30. On the same day, the Individuals filed an original petition as plaintiffs in a Harris County

---

to him at his address.

[6] The counterclaim against RSL was filed by the counsel apparently hired by RSL to represent the Individuals.

district court raising the same claims against both the MetLife parties and RSL that they previously had raised in the county court of law. On December 1, RSL also filed a nonsuit of all of its claims in the county court of law, without prejudice against refiling. In this document, RSL states that it sued all of the named defendants for declaratory relief and the MetLife parties for breach of contract. RSL further sought in the document dismissal of the MetLife parties' counterclaims, arguing that these claims were merely "mirror-image claims" intended to resist RSL's affirmative claims and did not constitute requests for affirmative relief in their own right. RSL further suggested that such nonsuit and dismissal meant that no claims or parties would remain alive in the lawsuit.[7] RSL followed this filing by filing its own cross-claims in the district court where the Individuals had earlier filed their petition. In that pleading, RSL sought a declaration regarding who owned the annuities at issue and also damages from the

---

[7] On December 8, 2011, the trial court paradoxically signed both RSL's nonsuit order, which included language purporting to dismiss the MetLife parties' counterclaims, as well as an order expressly stating that to the extent the nonsuit sought dismissal of the counterclaims it was denied and such claims were live and retained in the action. On the same day, the trial court stated in open court that it intended to retain the counterclaims as live causes of action. All parties thereafter continued to litigate as though live claims were still before the court.

RSL suggests on appeal, without expressly arguing, that the trial court may have lost plenary power 30-days after it signed the order of nonsuit. We disagree. As a matter of reason, although there is a conflict on the face of the orders and it cannot be determined which order was signed first, it must be recognized that the sole purpose of the order retaining the claims is to retain the claims even in the face of the dismissal; whereas, the main purpose of the dismissal appears to have been to dismiss RSL's claims pursuant to its nonsuit. This reading also comports with the trial judge's oral pronouncement that she intended to retain the MetLife parties' claims and not dismiss them as requested by RSL's counsel as well as the fact all parties continued in the litigation as though there were still live claims extant.

Moreover, even if we were to find that these two orders were irreconcilably in conflict, that would mean they cancel each other out and neither is therefore effective; thus, the MetLife parties' claims would not have been dismissed. *See Dean's Campin' Co. v. Hardsteen*, No. 13-05-468-CV, 2008 WL 3984161, at \*4 (Tex. App.—Corpus Christi Aug. 29, 2008, pet. denied); *Hawk Leasing Co. v. Tex. Workforce Comm'n*, 971 S.W.2d 598, 602-03 (Tex. App.—Dallas 1998, no pet).

6

MetLife parties for breach of contract. RSL is careful in this pleading to complain only of the MetLife parties and not the Individuals. RSL then filed its own pleadings in the district court where the Individuals had earlier filed their petition.

On January 20, 2012, RSL filed a plea to the jurisdiction in the county court at law, asserting that the amount in controversy in the case (*i.e.*, the annuity payments owed by the MetLife parties) exceeded the court's jurisdictional cap of $100,000, citing Texas Government Code sections 25.003 and 25.1032. RSL also demanded a jury trial and filed an answer to the interpleader action in the county court at law.

On January 30, 2012, the Individuals filed a motion to withdraw the funds deposited into the court's registry. No reason or basis is given in the motion for the request. An amended motion with updated amounts followed on February 24.

Meanwhile, on February 3, RSL filed a motion for summary judgment, seeking a determination that RSL Special-IV or Matz had a right to receive the monthly annuity proceeds from Pippins' annuity and seeking an order compelling the MetLife parties to direct future payments to either RSL Special-IV or Matz. The motion was based on the signing of the agreements by Pippins and on alleged concessions made by an employee of one the MetLife parties in a deposition. It is not entirely clear why RSL sought summary judgment regarding only Pippins' annuity, but evidence demonstrated Pippins also sold or attempted to sell the right to receive his annuity income to another lump-sum funding company.

On February 17, RSL filed a motion to stay the trial proceedings pending resolution of arbitration proceedings RSL had instituted against the Individuals. Attached to the motion was an arbitration demand RSL had filed with an

7

arbitrator.[8] In the arbitration filing, RSL complained that the Individuals "attempted to exercise dominion and control over annuity funds that belong to RSL." RSL further sought recovery therein for the Individuals' breach of their assignment agreements and for a "declaration of all rights." Around this same time, the Individuals' trial counsel—who had filed the Individuals' motions to withdraw funds and apparently had been compensated by RSL up to this point— filed a motion to withdraw. It was this same counsel, however, who filed the Individuals' motion and amended motion to withdraw funds.

On March 16, the district court granted the MetLife parties' motion to abate the district court proceedings in deference to the ongoing proceedings in the county court at law.[9] There appears to have been no further action taken in the district court after this order was entered.

New counsel appeared for the Individuals and filed a Notice of Withdrawal of Motions to Withdraw Funds before such motions could be presented to the court. The Individuals then filed a combined motion to stay arbitration and opposition to RSL's motion to stay the trial proceedings. In that document, the Individuals argued that (1) arbitration would not resolve any issues pending before

---

[8] RSL initially demanded arbitration with only O'Brien and Pippins, but not Morris, who was included in the request to withdraw funds from the court's registry. The arbitration demand later was amended to include Morris.

It should also be noted that the alleged right for RSL Special-IV or Matz to receive payments from the O'Brien annuities was apparently not scheduled to begin until March 2012. RSL stated in its motion to stay that it anticipated O'Brien would seek to withdraw funds from the court's registry at that time. No explanation is offered as to why the MetLife parties had already apparently deposited funds related to O'Brien's annuities or the fact that she had already requested to withdraw those funds. [dbl-ck to make sure not confusing the fact she had two]

[9] The MetLife parties assert that RSL filed a response to the abatement motion opposing it, specifically arguing that the district court rather than the county court at law was the correct forum in which to resolve the parties' disputes. However, the MetLife parties do not cite this document in their briefing, and it has not otherwise been discovered in the appellate record.

8

the court, at least in part because Matz and RSL Special-IV were not parties to the arbitration; (2) the arbitrator chosen by RSL appeared to be "partial or biased towards RSL"; (3) the arbitration provisions in the assignment agreements were unconscionable; and (4) RSL had waived its right to demand arbitration by substantially invoking the litigation process to the detriment of the other parties.[10] The MetLife parties also filed a response to RSL's motion, principally arguing waiver due to substantially invoking the litigation process. The trial court signed an order granting the Individuals' motion to stay arbitration on March 30, without specifying its basis. During a related hearing on March 28, the court orally denied RSL's motion to abate the trial proceedings, mentioning that RSL had itself started the litigation by filing suit instead of an arbitration, had requested relief from the court "innumerable times," and had participated in a dozen hearings involving "hundreds if not thousands[] of pages of exhibits and motions."[11] RSL's counsel also acknowledged at the hearing that it had reset its motion for partial summary judgment several times for hearing, even after filing the motion to abate the trial proceedings.

---

[10] In the opposition, the Individuals' counsel also sought sanctions and made serious allegations of impropriety against Stewart Feldman—RSL's CEO, a licensed attorney, and the sole shareholder in the law firm representing RSL—regarding his conduct in the litigation. The allegations included that Feldman attempted to instruct the Individual's new counsel on how to proceed in the litigation (even after RSL contends the Individuals became adverse parties) and not to take any action adverse to the position of Feldman and RSL. Allegations were also raised that Feldman repeatedly attempted to contact the Individuals directly despite warnings that he should not do so. RSL's counsel even acknowledged in a hearing that this latter accusation was true. Feldman apparently contends that the agreements signed by the Individuals gave RSL exclusive control of the litigation and the Individuals' involvement therein. The accusations were discussed in a hearing before the court regarding the motions to stay.

[11] The court further took the request for sanctions against Feldman under advisement and instructed Feldman not to communicate directly with the Individuals in the interim. In the hearing, counsel for the Individuals represented that all his clients wanted was to "get paid [by RSL] and go away," so that RSL and MetLife could continue their dispute, but that RSL seemed reluctant to allow that to happen.

## *Governing Law*

In two issues, RSL contends the trial court erred in overruling RSL's motion to stay the litigation pending arbitration and instead ordering a stay of the arbitration.[12] As set forth above, in their combined motion to stay arbitration and opposition to RSL's motion to stay the trial proceedings, the Individuals raised several grounds in contesting RSL's arbitration demand; however, we will primarily focus on the waiver ground in this opinion. A party can be held to have waived an arbitration clause if it has substantially invoked the judicial process to the other party's detriment or prejudice. *Perry Homes v. Cull*, 258 S.W.3d 580, 589–90 (Tex. 2008). Waiver is a question of law subject to de novo review, and we will only defer to the trial court's discretion on any factual disputes that need to be resolved. *See id*. at 587, 598. Waiver is a matter for the courts and not for arbitrators. *Id*. at 587.

The party opposing arbitration has the burden of proving waiver, and there is a strong presumption against such a finding. *Id*. at 590. Whether a party has

---

[12] In its Reply Brief, RSL suggests that at least parts of this appeal may have become moot because of filings made in this court during the pendency of the appeal. Although RSL only expressly suggests that the waiver ground raised by the Individuals and the MetLife parties below has been rendered moot, we briefly address this contention to the extent it may have relevance to the unchallenged ground from below on which this opinion is based.

Specifically, RSL points to a letter to this court allegedly signed by two of the Individuals, O'Brien and Morris, and attached to RSL's Motion to Clarify Stay Pending Interlocutory Appeal. In this letter, it is urged that the arbitration be allowed to continue even during the pendency of the appeal. RSL contends in its Reply Brief that this letter, along with another letter allegedly sent to the court by Pippins, indicates the Individuals have withdrawn their objections to arbitration, thus mooting at least a portion of the appeal. However, no letter from Pippins as identified in the Reply Brief appears in our files. Furthermore, the signature by O'Brien that appears in the letter attached to the Motion to Clarify does not appear original to that document but appears transferred from another source. No explanation is offered for this appearance. Moreover, no motion to dismiss the appeal or notice of withdrawal of opposition to arbitration has been received in this court. The documents referred to by RSL in its Reply Brief do not moot any issues in this appeal.

waived arbitration is decided on a case-by-case basis, based upon the totality of the circumstances. *Id.* at 591. While the court in *Perry Homes* did not offer detailed criteria that must be present or considered in order to find waiver, it did list a variety of factors that courts have found to be relevant to the analysis, including:

- whether the party who pursued arbitration was the plaintiff or the defendant;
- how long the party who pursued arbitration delayed before seeking arbitration;
- when the party who pursued arbitration learned of the arbitration clause's existence;
- how much the pretrial activity related to the merits rather than arbitrability or jurisdiction;
- how much time and expense has been incurred in litigation;

- whether the party who pursued arbitration sought or opposed arbitration earlier in the case;
- whether the party who pursued arbitration filed affirmative claims or dispositive motions;
- how much discovery has been conducted and who initiated the discovery;
- whether the discovery sought would be useful in arbitration;

- what discovery would be unavailable in arbitration;

- whether activity in court would be duplicated in arbitration;

- when the case was to be tried; and

- whether the party who pursued arbitration sought judgment on the merits.

*Id.* at 591–92. As the *Perry Homes* court pointed out, all of these factors are rarely presented in a single case, and waiver has been established based on only a few or

even a single one. *Id*. at 591.[13] Just how much litigation conduct will be considered "substantial" depends on the context. *Id*. at 593.

In regards to waiver of an arbitration clause, "prejudice refers to the inherent unfairness in terms of delay, expense, or damage to a party's legal position that occurs when the party's opponent forces it to litigate an issue and later seeks to arbitrate that same issue." *Id*. at 597 (quoting *Republic Ins. Co. v. PAICO Receivables, LLC*, 383 F.3d 341, 346 (5th Cir. 2004)). Such unfairness results when a party attempts "to have it both ways by switching between litigation and arbitration to its own advantage." *Id*. A party's delay in demanding arbitration does not by itself waive the right; however, when a party fails to demand arbitration and then "engages in pretrial activity inconsistent with an intent to arbitrate, the party later opposing a motion to compel arbitration may more easily show that its position has been compromised." *Id*. at 600 (quoting *PAICO Receivables*).

### *Invoking the Litigation Process*

We begin by examining whether RSL substantially invoked the litigation process before requesting arbitration; we will then consider whether sufficient prejudice or detriment was shown to justify the trial court's denial of that request. RSL acknowledges it actively pursued litigation against the MetLife parties, but explains that because it had no right to demand arbitration with those parties, it was compelled to litigate its claims against them. We, in fact, agree with RSL that any litigation activity it engaged in solely regarding the MetLife parties should not be a factor in analyzing whether it invoked the litigation process before demanding

---

[13] Most of the listed factors were gleaned by the *Perry Homes* court from federal cases; the court also stressed "the importance of keeping federal and state arbitration law consistent." 258 S.W.3d at 591, 594.

12

arbitration with the Individuals. *Cf. Pennzoil Co. v. Arnold Oil Co.*, 30 S.W.3d 494, 499-500 (Tex. App.—San Antonio 2000, orig. proc.).[14]

We disagree with RSL, however, regarding whether it substantially invoked the litigation process with respect to the Individuals before requesting arbitration. RSL filed its lawsuit against both the MetLife parties *and* the Individuals. *See Perry Homes*, 258 S.W.3d at 591 (identifying fact that party requesting arbitration was the one that filed the lawsuit as relevant factor).[15] RSL characterizes its declaratory judgment action against the Individuals as a "friendly dec action," insisting that because its interests and those of the Individuals were to some degree aligned when suit was initiated, it cannot be held to have substantially invoked the litigation process against the Individuals prior to the time that an "arbitrable dispute" arose between those parties. RSL maintains that an arbitrable dispute did not arise until the Individuals sought release of the funds in the court's registry to themselves.[16] We do not agree that an "arbitrable dispute" arises only when one

---

[14] In *Arnold Oil*, the San Antonio Court of Appeals held that the party opposing arbitration was not prejudiced because it expended resources in the litigation before an arbitration demand was made where those same expenditures would have occurred anyway because the party opposing arbitration made the same claims against another party in the litigation that was not a party to any arbitration agreement. 30 S.W.3d at 499-500. Here, RSL cannot be held to have substantially invoked the litigation process by steps it took in the litigation that were directed solely at the MetLife parties.

[15] RSL's petitions in this case do not mention the arbitration clauses, although RSL was clearly aware of them throughout the litigation as its early demand for arbitration with Pippins demonstrates.

[16] In its opening brief, RSL does not cite any authority supporting the proposition that simply because its interests were to some degree aligned with the Individuals means that it was not substantially invoking the litigation process in respect to the Individuals. In its Reply Brief, RSL argues that under section 37.006 of the Texas Civil Practice and Remedies Code, it was required to include the Individuals in the declaratory judgment action against the MetLife parties because the Individuals possessed an "interest that would be affected by the declaration" sought. Tex. Civ. Prac. & Rem. Code § 37.006.

It should also be noted that, at least at the beginning of the litigation, RSL was compensating the attorney representing the Individuals, although it appears that not all of the

13

party is no longer satisfied with the forum it initially selected. Even a "friendly dec action" "sounds in . . . statutory or common law theories as to the performance of any obligations, the satisfaction of any rights and/or the enforceability hereof" and would therefore be arbitrable under the arbitration clause.

Furthermore, there is indication in the record that the relationship between RSL and the Individuals was not as amicable as RSL suggests. Certainly, the parties RSL represented in the lawsuit, RSL Special-IV and Matz, stood to gain by a declaration that they, and not the Individuals, were entitled to receive the monthly annuity payments; as any declaratory judgment action is designed to do, it would put to rest the question of rights between the parties. RSL even appears to acknowledge at points in its briefing that there was always at least a potential for dispute between itself and the Individuals, a potential that would end if RSL received the relief it sought, *i.e.*, a declaration that RSL Special-IV or Matz was entitled to receive the monthly annuity payments instead of the Individuals.

For example, RSL points out that even when the Individuals ultimately retracted their motions to withdraw funds, RSL could "never know for sure the [Individuals'] real position here, giving rise to a live controversy the parties must arbitrate." (Internal quotation marks omitted.) But this was true during the entire course of the proceedings and especially so after RSL became aware very early in the litigation of Pippins' attempt to sell his annuity rights to another company as well as his request to one of the MetLife parties that he again be named the "Payee and Beneficiary" of his annuity. It was at that point RSL filed its first request for arbitration, alleging Pippins was refusing to cooperate in the lawsuit and had materially breached his contracts with RSL. Although RSL did not pursue the

---

attorney's filings in the case supported RSL's position in the litigation. As mentioned above, RSL also contends that the agreements executed by the Individuals obligated them to cooperate with RSL in the litigation.

request to ruling, it demonstrates that disputes and potential disputes existed in the relationship between RSL and the Individuals all along.[17]

Moreover, on November 28, the Individuals filed a counterclaim against RSL, alleging that it had breached the assignment agreements that RSL used as the basis for its declaratory judgment claim against the Individuals. The Individuals claimed severe financial distress had resulted from that breach. RSL, however, did not file a request for arbitration in response to these claims against it, even though the claims would certainly fall within the broad "[d]isputes . . . of any nature whatsoever" language in the arbitration clause. Instead, RSL elected to continue the litigation process.[18] While it is true that the Individuals nonsuited their affirmative claims against RSL rather quickly in the county court at law, the record reveals that the Individuals immediately thereafter, on November 30, 2011, filed an original petition in a Harris County district court raising the same claims against RSL.[19] But RSL waited until February 16, 2012 to file its motion to abate the trial proceedings pending resolution of the arbitration.

On February 3, RSL filed a motion for partial summary judgment in the county court at law. Although RSL describes this motion as only being aimed at

---

[17] The fact that the Individuals sought sanctions against RSL's CEO, Feldman, also illustrates the lack of harmony among the supposedly aligned parties. *See supra* n.10–11. Although a potential rather than live dispute might not by itself be sufficient to require a party to demand arbitration or risk waiving the right to do so, such disputes help explain why RSL would have raised declaratory judgment claims against the Individuals.

[18] There is a suggestion in the briefing that the Individuals' counterclaims were part of an attempt by RSL to escape the county court at law with the Individuals' aid. After all, both RSL and the Individuals then attempted to have the case transferred to a district court. But whether the counterclaims were designed for this purpose or not, they were certainly adversarial on the surface and both RSL and the Individuals continued to invoke the litigation process rather than pursue arbitration.

[19] These claims apparently stayed active in the district court until that court granted the MetLife parties' motion to abate in deference to the county court at law proceedings in mid-March, a motion that RSL opposed.

15

its claims respective to the MetLife parties, the motion itself does not appear that limited. The motion in fact seeks a declaration "that RSL Special-IV, Ltd. and /or or Marla B. Matz is the irrevocable payee and beneficiary of the payments owing under" the annuity originally issued to Pippins. This is the very claim RSL seeks to arbitrate against Pippins. RSL has set the motion for hearing on more than one occasion and as late as April 2012.[20] *See Perry Homes*, 258 S.W.3d at 591-92 (identifying the filing of a dispositive motion or the seeking of judgment on the merits as factors indicative of substantially invoking the litigation process).

Under the unique facts of this case, RSL substantially invoked the litigation process before requesting arbitration against the Individuals. *See id.* at 590 (explaining that whether a party has waived its right to demand arbitration is considered on a case-by-case basis). RSL initiated the litigation and brought the Individuals into it, engaged in considerable procedural maneuvering, was named a defendant by the Individuals in two different courts, and sought summary judgment on an issue it was also seeking to arbitrate.

### *Prejudice*

We next turn to the question of whether RSL's substantial invoking of the judicial process accrued to the Individuals' detriment or prejudice. Such detriment or prejudice again "refers to the inherent unfairness in terms of delay, expense, or damage to a party's legal position that occurs when the party's opponent" attempts "to have it both ways by switching between litigation and arbitration to its own advantage." *Id.* at 597. Delay alone is not sufficient to show prejudice, but when a party fails to demand arbitration and then "engages in pretrial activity inconsistent with an intent to arbitrate, the party later opposing a motion to compel arbitration

---

[20] In a hearing on the motions, the trial judge took particular interest in the motion for summary judgment as well as the repeated attempts to set it for hearing.

16

may more easily show that its position has been compromised." *Id.* at 600.[21] A trial court may take judicial notice of the record in determining prejudice. *Williams Indus., Inc. v. Earth Dev. Sys. Corp.*, 110 S.W.3d 131, 141 (Tex. App.— Houston [1st Dist.] 2003, no pet.) (citing *Marble Slab Creamery, Inc. v. Wesic, Inc.*, 823 S.W.2d 436, 439 (Tex. App.—Houston [14th Dist.] 1992, no writ)). Proof of prejudice is required; proof establishing the precise extent of that prejudice is not. *Perry Homes*, 258 S.W.3d at 599-600.

In arguing that the Individuals were not prejudiced by any delay in seeking arbitration, RSL focuses on the apparent fact that it did not burden the Individuals with substantial discovery requests prior to demanding arbitration. While RSL did engage in discovery with the MetLife parties and the MetLife parties sought discovery from the Individuals, RSL insists that none of that activity can be attributed to RSL's invoking of the litigation process. This reasoning is not entirely clear, however, because RSL initiated the lawsuit and brought the Individuals into it. *See generally PAICO Receivables*, 383 F.3d at 346-47 (discussing the prejudice resulting when discovery is conducted regarding both

---

[21] In discussing prejudice, the *Perry Homes* court quotes extensively from the Fifth Circuit's opinion in *PAICO Receivables*:

> While the mere failure to assert the right to demand arbitration does not alone translate into a waiver of that right, such failure does bear on the question of prejudice, and may, along with other considerations, require a court to conclude that waiver has occurred. The failure to demand arbitration affects the burden placed upon the party opposing waiver. When a timely demand for arbitration was made, the burden of proving waiver falls even more heavily on the shoulders of the party seeking to prove waiver. A demand for arbitration puts a party on notice that arbitration may be forthcoming, and therefore, affords that party the opportunity to avoid compromising its position with respect to arbitrable and nonarbitrable claims. In contrast, where a party fails to demand arbitration . . . and in the meantime engages in pretrial activity inconsistent with an intent to arbitrate, the party later opposing a motion to compel arbitration may more easily show that its position has been compromised, i.e., prejudiced.

*Perry Homes*, 258 S.W.3d at 600 (quoting *PAICO Receivables*, 383 F.3d at 346).

17

arbitrable and nonarbitrable claims). But even accepting RSL's position, the record still reveals that the Individuals were prejudiced by RSL's delay in requesting arbitration. *See Perry Homes*, 258 S.W.3d at 600 (rejecting a focus solely on the amount of discovery conducted in a case).

To begin with, during the period of delay, the Individuals have not received either their promised lump sum payments from RSL or their monthly annuity payments from the MetLife parties. They claim severe financial distress as a result. Although in its order instructing the MetLife parties to deposit the monthly payments into the court's registry, the court stated that it was doing so "*sua sponte*," it did so at the urging of the MetLife parties and RSL. In this regard, it should also be noted that the case was set for expedited trial before RSL sought, and this court issued, a stay pending appeal.[22]

The record further demonstrates that the Individuals filed numerous pleadings and motions in the trial court that they would not have needed to do had the case proceeded to arbitration earlier than RSL made its request. *See PAICO Receivables*, 383 F.3d at 347 (identifying the time and expense involved in litigation as key factors demonstrating prejudice).[23] Under the unique facts of this case, the Individuals were prejudiced by RSL's invoking the litigation process

---

[22] An additional factor in this case is that, after filing suit against the Individuals, RSL hired an attorney to represent them and allegedly attempted to control their conduct in the litigation. As discussed above, significant allegations of threats and intimidation have been made against RSL's CEO Feldman. It is not entirely clear in the record to what extent these alleged facts may have compromised the Individuals' positions in any possible arbitration between RSL and themselves. The Individuals' RSL-hired attorney filed the motion to withdraw funds before being replaced by new counsel hired by the Individuals. RSL subsequently sued the new counsel, who therefore withdrew from his representation of the Individuals, leaving them pro se.

[23] The record does not contain any specific evidence regarding expenses incurred by the Individuals, but precise proof of amounts spent is not required to show prejudice. *Perry Homes*, 258 S.W.3d at 599-600.

prior to filing for arbitration. Because we find that the trial court's orders granting a stay of arbitration proceedings and refusing to grant a stay pending arbitration were supported by the waiver ground, we need not address the other three grounds raised by the Individuals.[24] We overrule RSL's two issues.

We affirm the trial court's orders.

/s/ Martha Hill Jamison
Justice

Panel consists of Chief Justice Frost and Justices Jamison and McCally (Frost, C.J., dissenting).

---

[24] We have focused in this opinion on the waiver issue because this appears to be the issue that the parties and the trial court focused on in the proceedings below. We note, however, that the trial court generally granted the Individuals' motion to stay arbitration and denied RSL's motion to stay the trial proceedings pending arbitration without stating a specific basis for those actions. Among the other three grounds raised by the Individuals in their motion to stay and opposition to RSL's motion, the Individuals argued that that the arbitration would not resolve any issues that were then pending before the court, at least in part because Marla Matz, who according to RSL owned the annuity rights, and RSL Special-IV, which according to RSL purchased the annuity rights from the Individuals and then conveyed them in some fashion to Matz, were not parties to the arbitration proceeding. RSL has wholly failed to address this ground in its briefing to this court.

It is well established in Texas that when a trial court issues a ruling adverse to a party without specifying its grounds for doing so, the party on appeal must challenge each independent ground that was asserted by the appellees in the trial court. *See, e.g., In re Elamex, S.A. de C.V.*, 367 S.W.3d 879, 888 (Tex. App.—El Paso 2012, no pet.) (denial of motion for forum non conveniens); *U.S. Lawns, Inc. v. Castillo*, 347 S.W.3d 844, 846-49 (Tex. App.—Corpus Christi 2011, pet. denied) (denial of motion to compel arbitration); *Gross v. Carroll*, 339 S.W.3d 718, 723 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (grant of motion to dismiss for several reasons); *Hill v. Stephens*, No. 14-09-01030-CV, 2010 WL 5238587, at *3 (Tex. App.—Houston [14th Dist.] Dec. 16, 2010, no pet.) (mem. op.) (grant of motion to dismiss based on official immunity). This failure to challenge provides an alternative basis for affirming the trial court's holdings. *See, e.g., In re Elamex*, 367 S.W.3d at 888; *U.S. Lawns*, 347 S.W.3d at 846-49; *Gross*, 339 S.W.3d at 723; *Hill*, 2010 WL 5238587, at *3.