# IN THE SUPREME COURT OF TEXAS

═══════════
No. 14-0457
═══════════

RSL FUNDING, LLC, PETITIONER,

v.

CHEVEZE D. PIPPINS, DANIEL P. MORRIS, DONNA M. O'BRIEN, METROPOLITAN LIFE INSURANCE COMPANY, METLIFE INSURANCE COMPANY OF CONNECTICUT, AND METLIFE INVESTORS USA INSURANCE COMPANY, RESPONDENTS

══════════════════════════════════════════════
ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FOURTEENTH DISTRICT OF TEXAS
══════════════════════════════════════════════

**PER CURIAM**

The trial court and appellate decisions underlying this interlocutory appeal predate, but implicate, our decision in *Kennedy Hodges, L.L.P. v. Gobellan*, 433 S.W.3d 542 (Tex. 2014). There we said that "a party who litigate[s] one claim with an opponent d[oes] not substantially invoke the litigation process for a related yet distinct claim against another party with whom it had an arbitration agreement." *Id.* at 545 (citing *In re Serv. Corp. Int'l*, 85 S.W.3d 171, 175 (Tex. 2002)).

Here, one of the parties, petitioner RSL Funding, LLC (RSL), has arbitration agreements with three individuals—Cheveze Pippins, Daniel Morris, and Donna O'Brien (collectively, Individuals)—who are parties and owned annuity contracts they agreed to sell to RSL or its designee. However, neither RSL nor the Individuals have arbitration agreements with the companies that are also parties and wrote the annuity contracts—Metropolitan Life Insurance Company, MetLife

Insurance Company of Connecticut, and MetLife Investors USA Insurance Company (collectively MetLife). RSL sued MetLife and the Individuals in the County Court at Law No. 4 of Harris County (CCL) for a declaratory judgment after MetLife refused to honor contracts by which the Individuals sold their annuities. The parties also ended up in a district court suit involving the same subject matter. At first the individuals were aligned with RSL, but, later, disputes arose between them. RSL initiated arbitration with the Individuals and sought to stay the CCL suit pending its completion. The CCL denied the motion and RSL pursued this interlocutory appeal. The court of appeals affirmed, holding RSL waived its right to arbitrate by its litigation conduct involving both the Individuals and MetLife. 424 S.W.3d 674, 685-87 (Tex. App.—Houston [14th Dist.] 2014). In a footnote, the appeals court said it would also affirm because RSL did not challenge a separate ground on which the trial court could have denied the motion. *Id.* at 687 n.24.

We conclude that RSL did not waive its right to arbitrate by litigation conduct, but nevertheless affirm.

The Individuals owned annuities issued by MetLife. The annuity contracts do not contain, and are not subject to, arbitration agreements. Each of the Individuals assigned their annuities to RSL in exchange for immediate lump-sum payments and executed bills of sale to RSL Special-IV, Ltd. (RSL Special). The assignments[1] included clauses providing for dispute arbitration pursuant to the Federal Arbitration Act (FAA). *See* 9 U.S.C. § 3. MetLife was not a party to the assignments, objected to them, and refused to honor them. MetLife's refusal to honor the assignments precipitated

---

[1] O'Brien's son and daughter, as beneficiaries, were parties to the O'Brien assignment.

2

RSL's suing MetLife and the Individuals in the CCL in June 2011, seeking a declaratory judgment that its agreements with the Individuals were binding on MetLife. RSL attached affidavits from the Individuals to its petition. In the affidavits, the Individuals averred that they had sold and assigned their annuities to RSL, "its successors, and/or its assigns" and stated that if a dispute arose as to the binding nature of the assignment, they joined RSL in seeking "a declaratory judgment . . . that the [assignment documents] are valid and binding on all parties to this action, [and] that MetLife be ordered to irrevocably make the Assigned Payments otherwise due me, now to RSL Funding or its assignee."

Pippins, in July, and Morris, in August, informed RSL they were terminating their agreements with RSL so they could re-assign their annuity rights. In September, RSL moved the CCL to order Pippins to arbitrate based on his seeking to cancel his agreement and, in a separate motion, to have MetLife make any payments due under the policies either to Marla Matz, RSL's assignee, or into the registry of the court. Those motions were followed shortly by MetLife filing a counterclaim against RSL and cross-claims against the Individuals for declaratory judgment and seeking to interplead funds owed under the annuity contracts. In October, the CCL ordered MetLife to deposit funds into the registry of the court as they became due under the contracts, and neither RSL nor the Individuals allege MetLife has failed to comply with the order.

In November 2011, the Individuals filed counter- and cross-claims alleging that RSL breached its contract to pay the full lump sums due and MetLife breached its contract and its fiduciary duty and acted in bad faith by blocking the assignments to RSL. The Individuals sought transfer of the CCL suit to district court on the basis that damages alleged in their counter- and cross-

3

claims exceeded the CCL's jurisdiction. RSL supported their motion to transfer the CCL case, but the court denied it. The Individuals nonsuited their CCL claims on November 30, 2011, and sued both RSL and MetLife in Harris County district court the same day. As to RSL, the Individuals claimed they sold their annuities to RSL and it breached the contract by failing to pay the full lump sum agreed to. On December 1, 2011, RSL nonsuited its claims against the Individuals as well as MetLife in the CCL and sought dismissal of MetLife's claims that were pending in there. On January 19, 2012, RSL cross-claimed against MetLife in the district court suit for declaratory judgment and breach of contract as to the various annuities and agreements; it made no claim against the Individuals.

RSL filed a plea to the jurisdiction in the CCL based on the amount in controversy. It also filed a motion for summary judgment in the CCL as to MetLife's obligation to honor Pippins's assignment of his annuity, alleging MetLife's corporate representative had conceded in a deposition that MetLife must follow Pippins's instructions to redirect payments.

On January 30, 2012, the Individuals moved the CCL to distribute to them the payments MetLife had made into its registry. RSL responded in mid-February by (1) initiating arbitration proceedings with Pippins and O'Brien because they were attempting to exercise control over money belonging to RSL, and (2) moving the CCL for a stay of the CCL proceedings pending completion of arbitration. The motion for a stay was denied. Meanwhile, MetLife moved for abatement in the district court.

In March, RSL added Morris as a party to the arbitration it was seeking and moved the CCL to reconsider a stay of its proceedings pending completion of arbitration. The Individuals countered

4

by opposing RSL's motion and requesting the CCL to stay the arbitration proceedings. The parties' eventful journey in the trial courts, for the most part, came to a temporary end when the district court abated its case; the CCL denied RSL's plea to the jurisdiction; the CCL refused to abate the suit pending there; the CCL stayed arbitration; and RSL filed this interlocutory appeal.

A divided court of appeals affirmed. 424 S.W.3d at 687. Referencing *Perry Homes v. Cull*, 258 S.W.3d 580 (Tex. 2008), the appeals court held that RSL, through its actions in the trial courts, had impliedly waived its rights to arbitrate with the Individuals by substantially invoking the judicial process and that both MetLife and the Individuals had been prejudiced. 424 S.W.3d at 686. In a footnote, the court concluded that an alternative ground for affirming was that the Individuals raised multiple grounds in opposition to RSL's motion to stay the trial court proceedings, the trial court did not state a specific reason for denying RSL's motion to stay, and on appeal RSL failed to challenge one of the grounds the Individuals raised in opposing the stay—nonjoinder of RSL's assignees in the arbitration—and on which the trial court could have denied RSL's motion. *Id.* at 687 n.24. The court of appeals did not address the two additional grounds of bias and unconscionability raised by the Individuals in the CCL, although RSL addressed them in its briefing in the court of appeals.

Chief Justice Frost dissented. She concluded that RSL, though active in the trial court, did not invoke the judicial process with regard to any arbitrable claims. *Id.* at 687 (Frost, C.J., dissenting). She reasoned RSL's original inclusion of the Individuals—the only parties with whom RSL had arbitration agreements—as defendants in the CCL was required by the Uniform Declaratory Judgment Act, and thus should not be considered in determining whether RSL waived its right to

5

arbitrate with them. *Id.* at 689. Further, Chief Justice Frost concluded RSL's pursuit of non-arbitrable claims in litigation did not prejudice the individuals. *Id.* at 690-91.

In seeking to sustain the decisions of the court of appeals and the trial court, MetLife—who, as previously noted, does not have an arbitration agreement with RSL—asserts RSL waived its arbitration rights with the Individuals. MetLife claims the Individuals and it were prejudiced by RSL's forum-shopping that caused them to incur significant unnecessary pre-trial costs. It urges that RSL's original CCL suit sought affirmative relief from both MetLife and the Individuals; the suit was not really a friendly declaratory judgment action with regard to the Individuals; and RSL forced the Individuals to assert their claims to the annuity payments by requesting such funds be deposited into the court registry pursuant to MetLife's interpleader claim. MetLife further urges that RSL's actions in the separate lawsuit filed by the Individuals in district court must also be considered when determining whether RSL waived its right to arbitrate with the Individuals.

None of the Individuals filed briefs in the court of appeals, and only Morris has appeared here. Although RSL's standing was not challenged in either court below, Morris argues RSL lacked standing to either bring the initial suit in the CCL or compel arbitration of its disputes with the Individuals because there is no evidence RSL is acting as servicing agent for RSL Special or Matz. He further alleges the assignment agreement to RSL conveyed no rights for RSL to enforce if the agreement was executed after the bill of sale to RSL Special. Morris also incorporates MetLife's arguments by reference, asserts RSL's participation in discovery and delay from the initial filing of suit to the seeking of arbitration was excessive, and RSL's having made a motion for summary

6

judgment weighs heavily in favor of the lower courts' decisions that RSL waived its arbitration rights.

RSL, on the other hand, argues it could not have, and did not, assert arbitrable claims in the declaratory judgment suit it filed against MetLife because it did not have an arbitration agreement with MetLife; it did not have disputes with the Individuals and included them as parties only because the Declaratory Judgment Act necessitated its doing so; and including the Individuals was part of a "friendly" declaratory judgment action in which they were cooperating. RSL contends that once actual disputes arose with the Individuals, it acted reasonably quickly to seek arbitration of those disputes. RSL also argues its participation in pre-trial discovery and motions before seeking arbitration was limited to its disputes with MetLife and did not relate to or give rise to arbitrable disputes with the Individuals.

We necessarily begin by addressing Morris's standing argument, because standing is a component of subject matter jurisdiction and absent jurisdiction, a court cannot address the merits of a case. *Fin. Comm'n of Tex. v. Norwood*, 418 S.W.3d 566, 580 (Tex. 2013). Candidly noting that the question of RSL's standing was not challenged in the trial court or court of appeals, Morris cites *Hagen v. Hagen*, 282 S.W.3d 899, 911 (Tex. 2009), for the proposition that standing may be challenged for the first time in this Court. Also noting that RSL brought suit alleging that it was a special services entity for RSL Special and Matz, he urges there is no evidence RSL had any interest in any of the contracts at issue.

We agree with Morris that standing may be challenged for the first time in this Court. *See id.* But he cites no authority for his assertion that RSL lacks standing. Rather, he essentially

questions whether RSL's pleading of its special services arrangement with RSL Special and Matz is sufficient to allege standing, and argues that factual inconsistencies in the record raise questions as to RSL's standing. Under circumstances such as this, where jurisdiction is challenged for the first time on appeal, we have noted that plaintiffs do not have the same opportunities to replead, direct discovery to, or otherwise address the jurisdictional issue as they have when standing is raised in the trial court. *See Rusk State Hosp. v. Black*, 392 S.W.3d 88, 96 (Tex. 2012) ("[A] plaintiff may not have had fair opportunity to address jurisdictional issues by amending its pleadings or developing the record when the jurisdictional issues were not raised in the trial court."). Thus, when an appellate court is the first to consider jurisdictional issues, it construes the pleadings in favor of the plaintiff and, if necessary, reviews the record for evidence supporting jurisdiction. *Id.* If standing has not been alleged or shown, but the pleadings and record do not demonstrate an incurable jurisdictional defect, the case will be remanded to the trial court where the plaintiff is entitled to a fair opportunity to develop the record relating to jurisdiction and to replead. *See id.* at 96-97; *Westbrook v. Penley*, 231 S.W.3d 389, 394-95 (Tex. 2007).

We conclude RSL's pleadings are sufficient to allege standing and the record before us does not demonstrate an incurable jurisdictional defect. Moreover, because the case is returning to the trial court for further proceedings, Morris will have opportunity to fully develop and present the issue of RSL's standing there, should he choose to do so. We next address the merits of RSL's appeal.

The FAA generally requires courts to stay lawsuits involving arbitrable issues if a party with the right to arbitration seeks a stay pending arbitration of those issues. 9 U.S.C. § 3; *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 26 n.34 (1983) ("[T]he state courts

8

have almost unanimously recognized that the stay provision of § 3 applies to suits in state as well as federal courts . . . ."); *In re Bruce Terminix Co.*, 988 S.W.2d 702, 704 (Tex. 1998) (recognizing that Texas applies the FAA stay provision). On motion of a party to an arbitration agreement the trial court must order arbitration even though the order might result in less efficient, separate proceedings. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217 (1985); *see also Helena Chem. Co. v. Wilkins*, 18 S.W.3d 744, 750 (Tex. App.—San Antonio 2000), *aff'd*, 47 S.W.3d 486 (Tex. 2001).

A party's right to arbitrate may be waived by its substantially invoking the judicial process to the other party's detriment. *Perry Homes*, 258 S.W.3d at 589-90. To effect such an implied waiver, however, the conduct that substantially invoked the judicial process must have prejudiced the other party to the arbitration agreement. *See In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 783 (Tex. 2006). When courts consider allegations of such a waiver, "[t]here is a strong presumption" against it under the FAA. *Id.* The presumption governs in close cases. *Perry Homes*, 258 S.W.3d at 593. And, to reiterate what we said in *Kennedy Hodges*, "a party who litigate[s] one claim with an opponent d[oes] not substantially invoke the litigation process for a related yet distinct claim against another party with whom it ha[s] an arbitration agreement." 433 S.W.3d at 545.

Where facts are undisputed, whether the right to arbitrate has been waived is a matter of law subject to *de novo* review on appeal. *G.T. Leach Builders, LLC v. Sapphire V.P., LP*, 458 S.W.3d 502, 511 (Tex. 2015). The party asserting waiver bears a heavy burden of proof to show the party seeking arbitration has waived its arbitration right. *In re Bruce Terminix Co.*, 988 S.W.2d at 705 (citing *Walker v. J.C. Bradford & Co.*, 938 F.2d 575, 577 (5th Cir. 1991)). Whether waiver has

9

occurred depends on the totality of the circumstances. *Perry Homes*, 258 S.W.3d at 591. The

analysis involves numerous factors, including whether the party asserting the right to arbitrate was

plaintiff or defendant in the lawsuit, how long the party waited before seeking arbitration, the reasons

for any delay in seeking to arbitrate, how much discovery and other pretrial activity the party seeking

to arbitrate conducted before seeking arbitration, whether the party seeking to arbitrate requested the

court to dispose of claims on the merits, whether the party seeking to arbitrate asserted affirmative

claims for relief in court, the amount of time and expense the parties have expended in litigation, and

whether the discovery conducted would be unavailable or useful in arbitration. *See G.T. Leach*, 458

S.W.3d at 512; *Perry Homes*, 258 S.W.3d at 590-92.

Generally, no one factor is, by itself, dispositive. Parties seeking to arbitrate have taken

several different types of action without substantially invoking the judicial process. Examples of

such actions include filing suit, conducting discovery, noticing depositions, taking depositions,

agreeing to trial settings, and moving for procedural disposition. *See In re Bank One, N.A.*, 216

S.W.3d 825, 827 (Tex. 2007) (motion for new trial); *In re D. Wilson Constr.*, 196 S.W.3d at 783

(filing suit); *In re Vesta Ins. Grp., Inc.*, 192 S.W.3d 758, 764 (Tex. 2006) (taking depositions); *In

re Serv. Corp. Int'l*, 85 S.W.3d at 174-75 (seeking removal); *In re Bruce Terminix*, 988 S.W.2d at

704 (conducting discovery); *EZ Pawn Corp. v. Mancias*, 934 S.W.2d 87, 90 (Tex. 1996) (requesting

discovery, noticing depositions, agreeing to trial setting). Additionally, asserting defensive

claims—even if such claims seek affirmative relief—does not waive arbitration. *See G.T. Leach*,

458 S.W.3d at 513 (declining to find waiver where a party filed a compulsory counterclaim). And

while delay by the party seeking arbitration may be a factor, we have found no waiver in cases where

there were delays of as much as eight months and even two years. *In re Fleetwood Homes of Tex., L.P.*, 257 S.W.3d 692, 694 (Tex. 2008); *In re Vesta Ins. Grp.*, 192 S.W.3d at 763.

In a matter procedurally similar to this one, a developer sued a builder as part of two different lawsuits. *G.T. Leach*, 458 S.W.3d at 509 n.4. The builder participated in discovery in both suits, filed counterclaims in the first suit, pursued pre-trial motions such as to quash depositions, designate responsible third parties, and transfer venue, and eventually sought to compel arbitration in the second suit under its contract with the developer. *Id.* at 510, 513. The builder sought to arbitrate four months from the time it was added as a defendant in the second suit, and eighteen months from the time it was added as a defendant in the first suit. *Id*. at 512, 514. Yet we concluded the builder did not waive its right to arbitrate by substantially invoking the judicial process. *Id.* at 514. We noted many of the builder's actions were defensive and spurred by procedural rules providing that claims would be forfeited if action, such as filing the compulsory counterclaim, were not taken. *Id.* at 513 (citing Tex. R. Civ. P. 97(a)). Similarly, the builder's designation of responsible third parties and trial experts was necessitated by procedural deadlines for doing so. *Id.* at 514 (citing Tex. Civ. Prac. & Rem. Code § 33.004(a); Tex. R. Civ. P. 193.6(a), 195.2). We held that the builder's delay and its asserting of claims as prescribed by rule or statute to avoid their forfeiture did not waive its right to arbitrate. *Id.*

In *Perry Homes*, one of the few cases in which we have concluded a party waived its right to arbitrate, the plaintiffs "vigorously opposed (indeed spurned) arbitration" for 14 months and then moved to compel arbitration on the eve of trial. 258 S.W.3d at 584-85. Several defendants had previously requested arbitration and the plaintiffs opposed it, but the trial court had not ruled on the

11

motions. *Id.* at 585, 596. After concluding discovery, the plaintiffs moved to compel arbitration and the trial court granted the motion. *Id.* at 585. We reversed, concluding that by opposing and purposefully delaying arbitration while performing extensive discovery, the plaintiffs had prejudiced the defendants by substantially invoking the judicial process. *See id.* at 595-97.

Although this case involves three groups of parties, the parties contend only that disputes between two of the groups—the Individuals and RSL—are subject to arbitration. *See In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 738 (Tex. 2005) ("Because arbitration is contractual in nature, the FAA generally does not require parties to arbitrate when they have not agreed to do so.") (internal quotations omitted). That being so, two principles come into play. First, whatever conduct RSL took regarding its dispute with MetLife is not relevant to the question of whether RSL waived its arbitration rights with the Individuals. *See Kennedy Hodges*, 433 S.W.3d at 545. Second, to determine whether RSL waived its right to arbitrate with the Individuals, we look to the factual nature of the disputes between RSL and the Individuals to determine whether and when an arbitrable dispute arose and to analyze whether, *after* such a dispute arose, RSL's conduct waived its right to arbitrate. *See In re Rubiola*, 334 S.W.3d 220, 225 (Tex. 2011) ("To determine whether a claim falls within the scope of the [arbitration] agreement, courts must focus on the factual allegations of the complaint, rather than the legal causes of action asserted.") (internal quotations omitted).

RSL sued MetLife and the Individuals only after MetLife refused to honor the Individuals' assignments of their annuity contracts. The suit was for a judgment declaring the parties' rights under the assignments and contracts, but RSL did not allege any dispute with the Individuals. Rather, RSL asserted only that MetLife breached its annuity contracts by refusing to honor the

assignments, sought a declaratory judgment that the assignment agreements were enforceable, and sought a judgment against MetLife for damages, interest, costs, and attorney's fees. RSL did not seek recovery from the Individuals. To the contrary, its actions were supported by the Individuals as evidenced by their affidavits that, in part, waived citation because they fully "underst[ood] and support[ed] the nature of this action for declaratory relief."

The court of appeals disagreed that a "friendly" declaratory judgment action as between the Individuals and RSL did not give rise to arbitrable disputes, referencing the transfer to RSL of annuity payments that would result from such a declaratory judgment. 424 S.W.3d at 683-84. But when RSL filed suit, the Individuals *supported* such a judgment and transfer. RSL's filing of a declaratory judgment action and making the Individuals parties to it when the Individuals agreed with RSL's position did not evidence an existing dispute between them subject to arbitration. Further, like the builder in *G.T. Leach*, RSL asserted claims against the Individuals because it was procedurally necessary in order to preserve certain rights. *See* Tex. Civ. Prac. & Rem. Code § 37.006(a) ("When declaratory relief is sought, all persons who have or claim any interest that would be affected by the declaration must be made parties. A declaration does not prejudice the rights of a person not a party to the proceeding."). MetLife and Morris argue RSL's inclusion of the Individuals proves RSL knew it was seeking to terminate some of the Individuals' rights. To the contrary, what RSL sought was a declaratory judgment affirming what the Individuals had done and were at that time ratifying by their affidavits: the assignment of their rights under the MetLife policies. MetLife and Morris also argue RSL and the Individuals could have joined as plaintiffs, and the fact the Individuals were made defendants proves RSL anticipated an adversarial relationship.

13

But the existence of possible future disputes among parties to agreements where there is no current dispute among them—such as was the situation here between RSL and the Individuals when RSL filed suit—does not weigh in favor of a party having waived its right to arbitrate possible future disputes by filing suit when there are no disputes.

In the alternative, MetLife and Morris argue that even if RSL's original petition did not assert arbitrable claims, RSL failed to timely seek arbitration when arbitrable disputes unquestionably arose between the Individuals and RSL. They reference Pippins's and Morris's attempts to terminate their agreements with RSL in 2011. But in September 2011, RSL moved the CCL to order Pippins to arbitrate based on his seeking to cancel his agreement with RSL. And even though it failed at that point to seek arbitration with Morris, the failure, in context of its other conduct, does not indicate RSL intended to waive its right to arbitrate with Morris.

At the end of November, arbitrable disputes between RSL and the Individuals were clearly evidenced when the Individuals counterclaimed in the CCL against RSL for breach of contract. But the Individuals dismissed those counterclaims within a week, and RSL dismissed all of its claims in the CCL the day after the Individuals dismissed theirs. At that point, there were no claims in the CCL by the Individuals against RSL or by RSL against the Individuals—arbitrable or not. Then, on November 30, 2011, the Individuals filed an entirely separate lawsuit in district court. On January 30, 2012, they went back to the CCL and sought to withdraw annuity payments MetLife had paid into the registry of the court. Within two weeks, RSL sought arbitration with two of the Individuals, and on February 17, 2012, moved to stay the litigation pending completion of arbitration.

14

Even counting from Pippins's attempt to terminate his contract in July 2011, RSL sought arbitration with Pippins in less than three months, and with all the Individuals in less than eight months. Those delays are not long enough to prove RSL waived its right to arbitrate. *See In re Fleetwood Homes*, 257 S.W.3d at 694 (eight-month delay); *In re Vesta Ins. Grp.*, 192 S.W.3d at 763 (two-year delay).

Beyond delay, MetLife and Morris argue RSL's pretrial activities in the CCL waived its right to arbitrate. They argue RSL participated in "extensive discovery," pointing specifically to written discovery served on MetLife and the depositions of MetLife representatives and the Individuals. But those actions related to non-arbitrable disputes between RSL and MetLife. Further, any discovery from the Individuals was initiated by MetLife, not RSL. *See G.T. Leach*, 458 S.W.3d at 513-14 (holding passive participation in extensive pre-trial discovery does not waive the right to arbitrate). RSL's participation in the MetLife-noticed depositions of the Individuals was limited to objecting to the form of questions. *See In re Vesta Ins. Grp.*, 192 S.W.3d at 763 (holding a proponent of arbitration is not responsible for extensive discovery by another party).

MetLife and Morris argue RSL forced the Individuals to assert their claims to the annuity payments by requesting that such funds be deposited into the CCL registry. But at the time of RSL's motion to deposit the annuity payments in the registry there was not any dispute between the Individuals and RSL as to the right to the annuity payments; RSL and the Individuals agreed the payments had been assigned to RSL. Having MetLife deposit the funds into the court's registry merely assured the funds would be available to whoever was entitled to them. It did not create a dispute between RSL and the Individuals about who was entitled to them.

15

MetLife and Morris next argue RSL's February 2012 motion for summary judgment was a request for affirmative relief. But at that point, the only remaining issue in the CCL suit involved MetLife's interpleader claims because both RSL and the Individuals had nonsuited their claims and refiled in the district court. In any event, RSL requested the hearing on its motion for summary judgment be deferred and reset several times while RSL also moved to stay the CCL proceedings pending arbitration. *See Keytrade USA, Inc. v. Ain Temouchent M/V*, 404 F.3d 891, 897-98 (5th Cir. 2005) (holding that, regardless of whether a motion for summary judgment invokes the judicial process, a simultaneous alternative effort to compel arbitration clearly indicates there is no intent to waive arbitration).

Finally, MetLife and Morris assert RSL's conduct in the district court action, such as filing claims against MetLife, supports the court of appeals' waiver finding. However, none of the actions referenced by MetLife and reflected in the record were taken with regard to RSL's disputes with the Individuals. Accordingly, the referenced actions do not support a conclusion that RSL substantially invoked the judicial process as to those disputes.

To summarize, RSL's initial inclusion of the Individuals as defendants in the CCL action underlying this appeal did not indicate intent to waive its right to arbitrate disputes that might arise between it and the Individuals in the future. Resolution of the dispute created by MetLife's refusal to honor the agreements between RSL and the Individuals was the cause of the suit by RSL, and RSL made the Individuals parties in order to protect its procedural rights. RSL's participation in discovery in the CCL suit was in response to MetLife's actions, and RSL's requests for affirmative relief related to MetLife's non-arbitrable counterclaims. The delay between the appearance of an

16

arbitrable dispute with the Individuals and RSL's initiation of arbitration was not so long as to establish RSL intended to waive its right to arbitrate with the Individuals, especially in light of its other efforts to avoid litigation disputes with the Individuals. The heavy burden to prove RSL invoked the judicial process sufficiently to waive its contractual arbitration rights with the Individuals was not met, and the court of appeals erred in so holding. *See In re Bruce Terminix*, 988 S.W.2d at 705. The failure of the first prong of implied waiver by invocation of the judicial process renders analysis of the second prong—prejudice or detriment of the opponent—unnecessary. *See id.* at 704 ("Courts will not find that a party has waived its right to enforce an arbitration clause by merely taking part in litigation unless it has substantially invoked the judicial process to its opponent's detriment.").

Although the court of appeals erred by holding RSL waived its right to arbitrate by litigation conduct, in a footnote it said it would have affirmed the trial court's rulings on the alternative basis that RSL did not challenge one ground on which the CCL could have ruled in denying RSL's motion to stay the litigation—RSL failed to join its assignees in the arbitration. RSL urges that as to that part of its decision, the court of appeals was in error. But after reviewing RSL's briefs in the court of appeals, we agree with the appeals court and will affirm.

We grant the petition for review. Without hearing oral argument, *see* TEX. R. APP. P. 59.1, we affirm the judgment of the court of appeals and remand the case to the trial court for further proceedings consistent with this opinion.


**OPINION DELIVERED:** July 1, 2016