**AFFIRMED IN PART; REVERSED AND RENDERED IN PART; and Opinion Filed October 4, 2022**



**In the**

**Court of Appeals**

**Fifth District of Texas at Dallas**

**No. 05-21-00885-CV**

**ALARCON CONSTRUCTION GROUP LLC; AND AGUSTIN ALARCON, Appellants**

**V.**

**HUGO CESAR SANTOYO DBA H&A LANDSCAPING, Appellee**

**On Appeal from the County Court at Law No. 2**
**Collin County, Texas**
**Trial Court Cause No. 002-00006-2021**

## MEMORANDUM OPINION

Before Justices Myers, Carlyle, and Goldstein
Opinion by Justice Carlyle

Alarcon Construction Group LLC (ACG) and Agustin Alarcon (collectively, the ACG Parties) appeal from the trial court's order denying their motion to compel alternative dispute resolution (ADR) against Hugo Cesar Santoyo d/b/a H&A Landscaping. In this memorandum opinion, we reverse as to ACG and affirm as to Mr. Alarcon. *See* TEX. R. APP. P. 47.4.

ACG acted as a general contractor on certain Texas Department of Transportation (TXDOT) construction projects. In July 2018, ACG and Mr. Santoyo executed a subcontract providing that H&A would perform "brush removal, tree

trimming, and tree removal" services on one of those projects, in exchange for $45,000. As relevant to this appeal, the Subcontract contains an ADR clause: "Claims, disputes, or other matters in controversy arising out of or related to this Subcontract . . . shall be subject to mediation as a condition precedent to binding [arbitration]." The Subcontract further specifies that "any Claim subject to, but not resolved by, mediation shall be subject to arbitration which, unless the parties mutually agree otherwise, shall be administered by the American Arbitration Association in accordance with its Construction Industry Arbitration Rules in effect on the date of this Agreement."

H&A performed services on the TXDOT project, and ACG paid H&A approximately $23,000. But a dispute arose as to the remaining sum due under the Subcontract. Mr. Santoyo sued ACG and its owner, Mr. Alarcon, in December 2020, alleging claims for breach of contract, promissory estoppel, and negligent misrepresentation.

Mr. Santoyo served his original petition in February 2021 and amended it in March. In his first amended petition, Mr. Santoyo admitted signing the Subcontract and added claims for unjust enrichment, tortious interference, fraud, fraudulent inducement, alter ego, and joint enterprise. At the end of March, counsel for the ACG Parties emailed Mr. Santoyo's counsel, providing a copy of the Subcontract and pointing out the ADR clause. Counsel closed the email with: "Lastly, per the

contract, I assume your client will want to begin the arbitration process. Let me know how quickly he would like to begin this process."

About a week later, the ACG Parties filed their answers. Although ACG's answer asserted that Mr. Santoyo's claims were subject to binding arbitration, Mr. Alarcon's answer did not. Instead, Mr. Alarcon filed a motion to dismiss a portion of Mr. Santoyo's claims under rule 91a, specially excepted to all of Mr. Santoyo's claims against him, and moved for sanctions against Mr. Santoyo under rule 13. In his combined special exceptions and sanctions motion, Mr. Alarcon argued that all of Mr. Santoyo's claims against him were deficient, that they were brought in bad faith, and that Mr. Santoyo could not cure the deficiencies by re-pleading. He thus asked the trial court to dismiss those claims with prejudice.

The trial court set Mr. Alarcon's motions for hearing on May 25. Five days before that hearing, Mr. Santoyo filed a second amended petition, adding additional facts to support his allegations. In response, Mr. Alarcon withdrew his rule 91a motion as moot. But he went forward with his combined special exceptions and sanctions motion, which the trial court denied after the May 25 hearing.

In early June, the ACG Parties requested initial disclosures from Mr. Santoyo and noticed his deposition, although they withdrew that notice soon afterwards. On July 14, the ACG Parties filed a demand for mediation and binding arbitration with the American Arbitration Association, which Mr. Santoyo promptly moved to quash.

In early August, the ACG Parties served two sets of discovery requests aimed at the issue of arbitrability, and Mr. Alarcon amended his answer to assert that Mr. Santoyo's claims against him were subject to mandatory mediation and binding arbitration. The ACG Parties also moved the trial court to compel the case to ADR.

In September, Mr. Santoyo amended his petition again, adding additional allegations against the ACG Parties. The trial court also conducted hearings on the parties' competing motions to quash and compel ADR, after which it entered orders granting Mr. Santoyo's motion and denying the ACG Parties' motion. The ACG Parties appeal from the order denying their motion to compel the case to ADR.

We review the denial of a motion to compel ADR for abuse of discretion, reviewing legal questions de novo and factual determinations under a no-evidence standard. *Sidley Austin Brown & Wood, L.L.P. v. J.A. Green Dev. Corp.*, 327 S.W.3d 859, 863 (Tex. App.—Dallas 2010, no pet.). When, as here, the trial court does not enter findings of fact or conclusions of law, we will uphold its decision on any appropriate legal theory urged in the trial court. *Fee, Smith, Sharp & Vitullo, LLP v. Strunk*, No. 05-21-00003-CV, 2021 WL 4472608, at *3 (Tex. App.—Dallas Sept. 30, 2021, pet. denied) (mem. op.). Thus, we must review the trial court's decision in light of the grounds asserted below. *Id.* (citing *Cardwell v. Whataburger Rests., L.L.C.*, 484 S.W.3d 426, 428 (Tex. 2016)).

THE TRIAL COURT CORRECTLY DENIED THE MOTION TO COMPEL AS TO MR. SANTOYO'S CLAIMS AGAINST MR. ALARCON

A party seeking to compel arbitration must establish both the existence of a valid arbitration agreement between the parties and that its opponents' claims are within the scope of that agreement. *See MiCocina, Ltd. v. Balderas-Villanueva*, No. 05-16-01507-CV, 2017 WL 4857017, at *3 (Tex. App.—Dallas Oct. 27, 2017, no pet.) (mem. op.). As part of this initial burden, the movant must prove either that it is a party to the arbitration agreement at issue or that it otherwise has the right to enforce it against the nonmovant. *VSR Fin. Servs., Inc. v. McLendon*, 409 S.W.3d 817, 827 (Tex. App.—Dallas 2013, no pet.). "Once the movant makes this showing, the burden shifts to the opposing party to prove a defense to enforcement of the otherwise valid arbitration agreement." *MiCocina*, 2017 WL 4857017, at *3.

As a general rule, "an arbitration clause cannot be invoked by a non-party to the arbitration contract." *GT Leach Builders LLC v. Sapphire VP LP*, 458 S.W.3d 502, 524 (Tex. 2015) (quoting *Grigson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524, 532 (5th Cir. 2000)). Agreements to arbitrate are matters of consent, not coercion. *Roe v. Ladymon*, 318 S.W.3d 502, 510 (Tex. App.—Dallas 2010, no pet.). Mr. Alarcon admits he is not a party to the Subcontract. Yet, the ACG Parties' motion to compel is silent as to how Mr. Alarcon, as a non-signatory, could independently enforce the Subcontract's arbitration provision against Mr. Santoyo. The ACG Parties simply argued that "the claims asserted by Santoyo against both defendants

–5–

fall within the scope of the arbitration clause."[1] That is not enough to satisfy Mr. Alarcon's burden, which required him to show both that Mr. Santoyo's claims against him fell within the scope of the Subcontract's arbitration agreement and that he had the legal right to enforce the agreement against Mr. Santoyo. In the absence of evidence and argument establishing an exception to the general rule that non-parties cannot enforce an arbitration agreement, the trial court did not err by denying the motion to compel as to Mr. Alarcon.

### THE TRIAL COURT ERRED IN DENYING THE MOTION TO COMPEL AS TO MR. SANTOYO'S CLAIMS AGAINST ACG

With respect to ACG, Mr. Santoyo admits he signed the Subcontract, although he claims he did not agree to arbitrate any dispute with ACG because he does not speak English and thus did not read or understand the ADR provision. But a "party to an arms-length transaction is charged with the obligation of reading what he signs and, failing that, may not thereafter, without a showing of trickery or artifice, avoid the instrument on the ground that he did not know what he was signing." *Id.* at *5 (quoting *Thigpen v. Locke*, 363 S.W.2d 247, 251 (Tex. 1962)). "If a person is unable to read a contract, it is his duty to find some reliable person to read and explain it to

---

[1] "The initial burden of the party seeking to compel arbitration—to establish the arbitration agreement's existence—includes proving the entity seeking to enforce the arbitration agreement was a party to it or had the right to enforce the agreement notwithstanding." *See Mohamed v. Auto Nation USA Corp.*, 89 S.W.3d 830, 836 (Tex. App.—Houston [1st Dist.] 2002, no pet.).

him before he signs it." *Id.* at *6. Mr. Santoyo cannot avoid the Subcontract's ADR provision merely by alleging an inability to read English.

Likewise, he cannot avoid the ADR provision by arguing that the Subcontract itself is invalid. Challenges going to the validity of a contract as a whole, rather than those aimed specifically at its arbitration provision, must be decided by the arbitrator. *Id.* at *3 (citing *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 647–48 (Tex. 2009)). Accordingly, we do not address Mr. Santoyo's various arguments as to why the Subcontract itself is deficient.

Instead, we turn to the issue of whether Mr. Santoyo's claims fall within the scope of the Subcontract's ADR provision. We broadly interpret the scope of an arbitration agreement. *Quality Metrics Partners, LLC v. Blasingame*, No. 05-18-00394-CV, 2019 WL 4010773, at *6 (Tex. App.—Dallas Aug. 26, 2019, no pet.) (mem. op.). "[A]rbitration provisions that employ terms like 'any dispute' and 'relating to' are broad arbitration clauses capable of expansive reach and create a presumption of arbitrability." *Id.* (quoting *In re Signor*, No. 05-16-00703-CV, 2017 WL 1046770, at *4 (Tex. App.—Dallas Mar. 20, 2017, no pet. (mem. op.)). The Subcontract's ADR provision covers all "[c]laims, disputes, or other matters in controversy arising out of or related to this Subcontract."

To determine whether Mr. Santoyo's claims fall within the broad scope of the ADR provision, we must focus on the factual allegations in his petition rather than

the legal causes of action he asserts. *Id.* "Generally, if the factual allegations 'touch matters,' are 'factually intertwined,' have a 'significant relationship' to, or are 'inextricably enmeshed' with the contract containing the arbitration provision, the claim is arbitrable." *Id.* (quoting *In re Signor*, 2017 WL 1046770, at *4).

The Subcontract provides that H&A would "perform all brush removal, tree trimming, and tree removal" required for one of ACG's TXDOT projects, in exchange for $45,000. Mr. Santoyo filed this lawsuit seeking to recover the unpaid portion of that $45,000, initially alleging that "[t]here is a valid and enforceable contract between Plaintiff and Defendants relative to the [TXDOT] Project; the duties, obligations and terms of which are clear and straightforward." He added that "[t]he Contract contains all material terms and provisions and Plaintiff fully and timely performed its obligations under the Contract." Yet, after ACG pointed out the Subcontract's ADR clause, Mr. Santoyo amended his petition and re-cast his contractual claims under tort and quasi-contractual theories. It is the underlying nature of the claims that controls, however, and a party cannot avoid arbitration through artful pleading. *See Garg v. Pham*, 485 S.W.3d 91, 102–03 (Tex. App.—Houston [14th Dist.] 2015, no pet.).

The substance of Mr. Santoyo's claims is that ACG assured him he would receive $45,000 for performing work on the TXDOT project, which it wrongfully refused to pay. His claims thus arise out of or are related to the Subcontract and are

subject to its ADR provision. Because ACG met its burden of showing Mr. Santoyo's claims are subject to a valid agreement to arbitrate, the burden shifted to Mr. Santoyo to establish a defense to its enforcement. *MiCocina, Ltd.*, 2017 WL 4857017, at *3.

Mr. Santoyo argues the agreement to arbitrate is unenforceable because: (1) it was unconscionable when made; (2) conditions precedent to its enforcement were not satisfied; and (3) ACG waived enforcement by substantially invoking the litigation process. We address each argument in turn.

## MR. SANTOYO DID NOT ESTABLISH UNCONSCIONABILITY

An agreement to arbitrate is unenforceable if it was unconscionable when made. *See* TEX. CIV. PRAC. & REM. CODE § 171.022. Unconscionability is determined in light of a variety of factors and has two aspects: (1) "procedural unconscionability, which refers to the circumstances surrounding the adoption of the arbitration provision"; and (2) "substantive unconscionability, which refers to the fairness of the arbitration provision itself." *MiCocina, Ltd.*, 2017 WL 4857017, at *3. "Procedural unconscionability relates to the making or inducement of the contract, focusing on the facts surrounding the bargaining process." *Id.*

Mr. Santoyo argues that "[e]veryone in this case knows [he] cannot afford to present his claim in arbitration." And he asserts it was unconscionable for ACG to require him to sign the agreement, in a language he did not understand, before it

would allow him to perform work on the project. He further contends he had no choice but to sign the agreement because he needed the money.[2]

As an initial matter, Mr. Santoyo points to no record evidence of his economic condition at the time he signed the Subcontract, much less evidence that the ACG Parties were aware of that condition and exploited it. Moreover, there is nothing inherently unconscionable about a general contractor requiring a subcontractor to sign a written agreement with an arbitration clause before allowing the subcontractor to perform work on a government project.

To the extent Mr. Santoyo complains ACG presented the Subcontract in English without providing a translation, ACG had no duty to do so. An ancient line of cases stands for the proposition that Mr. Santoyo had a duty to seek out a translation. *See id.* at \*5–6 (citing cases). Mr. Santoyo points to no record evidence suggesting the ACG Parties prevented him from obtaining a translation or that they affirmatively misrepresented the nature of the arbitration agreement. *See MiCocina, Ltd.*, 2017 WL 4857017, at \*6. We conclude Mr. Santoyo did not satisfy his burden of proving the agreement to arbitrate is unconscionable.

---

[2] To the extent Mr. Santoyo alludes elsewhere in his brief that the agreement is unenforceable because the ACG Parties placed him under economic duress, he did not present that argument in the trial court, and we cannot uphold the trial court's order on that basis. *See Strunk*, 2021 WL 4472608, at \*3 (courts of appeals limit review of decisions to deny arbitration to grounds presented in the trial court). Regardless, Mr. Santoyo points to no evidence that could establish an economic-duress defense. *See Leibovitz v. Sequoia Real Estate Holdings, L.P.*, 465 S.W.3d 331, 349 (Tex. App.—Dallas 2015, no pet.) (noting the elements of an economic-duress defense include: "(1) a threat to do something that the threatening party has no legal right to do; (2) some illegal exaction or some fraud or deception; and (3) the restraint is imminent and such as to destroy free agency without present means of protection").

## MR. SANTOYO WAIVED ANY CONDITIONS PRECEDENT

Mr. Santoyo also contends his claims are not subject to arbitration because the Subcontract's ADR clause makes mediation an express condition precedent to binding arbitration, and mediation never occurred. But ACG requested mediation in the demand it filed with the American Arbitration Association, as required under the Subcontract. Mr. Santoyo prevented that mediation by successfully moving to quash the demand. Mr. Santoyo cannot both unilaterally prevent ACG from fulfilling a condition precedent to arbitration and then defend against arbitration on the ground that ACG did not satisfy the condition precedent.

In any event, Mr. Santoyo waived the mediation requirement by filing this lawsuit without first seeking to mediate his dispute with ACG. *See Rodriguez v. Tex. Leaguer Brewing Co. L.L.C.*, 586 S.W.3d 423, 430 (Tex. App.—Houston [14th] 2019, pet. denied); *Glob. Evangelism Educ. Ministries, Inc. v. Caddell*, No. 04-08-00686-CV, 2009 WL 398255, at *2 (Tex. App.—San Antonio Feb. 18, 2009. no pet.) (mem. op.).

## ACG DID NOT WAIVE ARBITRATION BY SUBSTANTIALLY INVOKING THE JUDICIAL PROCESS

A party waives the right to compel arbitration by substantially invoking the judicial process in a manner that prejudices the opposing party. *Perry Homes v. Cull*, 258 S.W.3d 580, 584 (Tex. 2008). Whether a party has waived arbitration is a

question of law. *Id.* at 598. But there is a strong presumption against waiver, and the burden of proving it is heavy. *Id.* at 589–90.

A party substantially invokes the judicial process by taking specific and deliberate actions that are inconsistent with invoking the right to arbitration or by actively trying, but failing, to achieve a satisfactory result through litigation before turning to arbitration. *Holmes, Woods & Diggs v. Gentry*, 333 S.W.3d 650 (Tex. App.—Dallas 2009, no pet.). In determining whether a party substantially invoked the judicial process, we look at the totality of the circumstances. *Perry Homes*, 258 S.W.3d at 591. Relevant factors may include:

- whether the party seeking to arbitrate is the plaintiff or defendant;

- when the party knew of the arbitration clause;

- how long the party waited before seeking arbitration and any reasons for the delay;

- how much discovery the parties conducted, who initiated it, whether it related to the merits rather than arbitration or standing, and how much of it would be unavailable or useful in arbitration;

- whether the party sought judgment on the merits;

- whether the party asserted affirmative claims for relief in court;

- the amount of time and expense the parties have expended on litigation;

- whether judicial activity would be duplicated in arbitration; and

- when the case would be tried.

*See RSL Funding, LLC v. Pippins*, 499 S.W.3d 423, 430 (Tex. 2016); *G.T. Leach Builders, LLC v. Sapphire V.P., LP*, 458 S.W.3d 502, 512 (Tex. 2015); *Perry Homes*, 258 S.W.3d at 591. Generally, no single factor is dispositive. *RSL Funding*, 499 S.W.3d at 430. But "key factors include the reason for delay in moving to enforce arbitration, the amount of discovery conducted by the movant, and whether the movant sought disposition on the merits." *Richmont Holdings, Inc. v. Superior Recharge Sys., L.L.C.*, 455 S.W.3d 573, 575 (Tex. 2014).

The prejudice prong refers to the inherent unfairness in terms of delay, expense, or damage to a party's legal position caused when a party's opponent forces it to litigate an issue and later seeks to arbitrate the same issue. *Perry Homes*, 258 S.W.3d at 597. The party seeking to establish waiver must demonstrate prejudice, but it need not prove its precise extent. *Id.* at 599.[3]

Here, Mr. Santoyo argues the ACG Parties substantially invoked the litigation process by, among other things: (1) waiting more than six months to move to compel arbitration; (2) participating in discovery; (3) seeking judgment on the merits; and (4) seeking affirmative relief in the form of sanctions. But Mr. Santoyo impermissibly groups ACG's actions together with Mr. Alarcon's. ACG and Mr.

---

[3] As we have recently noted, the Supreme Court has held that in federal court, "prejudice is not a condition of finding that a party, by litigating too long, waived its right to stay litigation or compel arbitration under the FAA." *Green v. Velocity Invs., LLC*, No. 05-20-00795-CV, 2022 WL 3655232, at *5 (Tex. App.—Dallas Aug. 25, 2022, no pet. h.) (citing *Morgan v. Sundance, Inc.*, 142 S. Ct. 1708, 1714 (2022)).

Alarcon are distinct parties, with distinct legal interests, that have taken independent actions in this case. We must therefore review ACG's actions independently from Mr. Alarcon's when determining the extent to which it may have invoked the judicial process.[4]

ACG asserted in its answer that Mr. Santoyo's claims were subject to binding arbitration. Although it participated in discovery, it largely limited that participation to responding to Mr. Santoyo's discovery requests—after the trial court compelled it to do so. It requested initial disclosures, but the only other discovery requests it made related to the issue of arbitrability. And although it noticed Mr. Santoyo's deposition, it promptly withdrew that notice. Unlike Mr. Alarcon, ACG did not file any dispositive motions. And its six-month delay in bringing a motion to compel ADR is not, without more, sufficient to constitute waiver. *See G.T. Leach Builders*, 458 S.W.3d at 515. Under the totality of the circumstances, we conclude ACG did not substantially invoke the judicial process and thus do not reach the prejudice inquiry.

We reverse the trial court's order to the extent it denies ACG's motion to compel arbitration and render judgment ordering arbitration of Mr. Santoyo's claims against ACG. In all other respects, we affirm the trial court's order. We lift the stay

---

[4] Because we conclude Mr. Alarcon did not meet his burden of establishing a basis for enforcing the Subcontract's arbitration provision as a non-party, we need not address the extent to which he may have waived any right to compel arbitration by substantially invoking the judicial process to Mr. Santoyo's detriment.

issued by this Court on October 25, 2021, and we remand this case for further proceedings consistent with this opinion.



210885f.p05

/Cory L. Carlyle/
CORY L. CARLYLE
JUSTICE

–15–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

ALARCON CONSTRUCTION
GROUP LLC; AND AGUSTIN
ALARCON, Appellant

No. 05-21-00885-CV     V.

HUGO CESAR SANTOYO DBA
H&A LANDSCAPING, Appellee

On Appeal from the County Court at
Law No. 2, Collin County, Texas
Trial Court Cause No. 002-00006-
2021.
Opinion delivered by Justice Carlyle.
Justices Myers and Goldstein
participating.

In accordance with this Court's opinion of this date, the trial court's order is **AFFIRMED** in part and **REVERSED** in part. We **REVERSE** that portion of the trial court's order that denies Alarcon Construction Group LLC's motion to compel alternative dispute resolution and **ORDER** that Hugo Cesar Santoyo d/b/a H&A Landscaping's claims against Alarcon Construction Group LLC be arbitrated in accordance with the parties' written subcontract. In all other respects, the trial court's order is **AFFIRMED**. We lift the stay entered October 25, 2021 and **REMAND** this cause to the trial court for further proceedings consistent with the opinion.

It is **ORDERED** that each party bear its own costs of this appeal.

Judgment entered this 4th day of October, 2022.