**REVERSE in part; AFFIRM in part; REMAND and Opinion Filed April 19, 2023**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-21-00330-CV**

**LOUISIANA-PACIFIC CORPORATION AND RICHMOND INTERNATIONAL FOREST PRODUCTS, LLC, Appellants**

**V.**

**NEWPORT CLASSIC HOMES, L.P., WESTERN RIM INVESTORS 2014-3, L.P., AND BRIDGEWELL RESOURCES, LLC, Appellees**

**On Appeal from the 199th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 199-02044-2016**

# MEMORANDUM OPINION

Before Justices Pedersen, III, Garcia, and Breedlove[1]
Opinion by Justice Breedlove

Louisiana-Pacific Corporation and Richmond International Forest Products,

LLC appeal the trial court's order denying their motion to compel arbitration.

Because we conclude that appellees' claims seek the benefit of a warranty that

contains a valid and enforceable arbitration agreement and appellants did not waive

---

[1] Justice Lana Myers was a member of the panel at the time the case was submitted. Justice Myers has now retired. Justice Maricela Breedlove has succeeded Justice Myers as a member of the panel and has reviewed the briefs, record, and oral argument recording made at submission.

their right to arbitrate by substantially invoking the judicial process, we reverse the trial court's order, in part, and remand to the trial court for referral to arbitration.

## BACKGROUND

This suit addresses the applicability of an arbitration clause in a product warranty, when the relationship between the manufacturer and ultimate purchaser is complicated by intervening distributors and retailers. Newport Classic Homes, L.P. and Western Rim Investors 2014-3, L.P. purchased Oriented Strand Board (OSB) that was manufactured by Louisiana-Pacific Corporation (hereafter "LP"). They purchased the materials from Bridgewell Resources, LLC, a retailer, who purchased the materials from Richmond International Forest Products, LLC, the distributor. Richmond is the only party who contracted directly with LP for the purchase of the materials.

In 2015, Newport and Western Rim noticed problems with the OSB decking. They complained that an inspection revealed "all floor decking was found to be moist, soft, spongy, and fractured." On October 24, 2015, Bridgewell filed a warranty claim for the OSB flooring on Newport's behalf. The claim was submitted on an LP "Claim Request Form, Structural Products Warranty Office." LP assigned Claim Number 536711 to the complaint, and on November 19, 2015, LP emailed a copy of the warranty to Western Rim.

In response to the claim, LP advised that it would need to inspect the flooring and that it would either repair or replace the OSB panels, as provided by the LP

warranty. LP eventually offered to pay $380,000.00 under its warranty. Newport rejected the offer and asserted the full warranty cost was approximately $2.5 million, and further advised that the "warranty claim will expand" to include a second property.

On January 26, 2016, Marcus Hiles of Newport and Western Rim complained that "[t]he product did not perform as intended as specified in the contract documents." Hiles continued, "Newport purchased LP's OSB because, among other things, LP's published literature on its website made . . . representations and warranties" about the product's quality and features. He stated that although "LP appears to be relying on its 'limited warranty,'" the amount LP had offered to pay under it was "only 1/4 of the true cost," and was "wholly reject[ed]." He continued, "[a]ccordingly, please consider this FORMAL NOTICE AND DEMAND that LP stand by its representations and warranties and pay for the replacement of its faulty products." Hiles warned that he would instruct his legal counsel to file suit "[s]hould LP fail to come [to] terms with its mistakes and misrepresentations and make us whole."

On May 11, 2016, Newport and Western Rim sued LP, Richmond, and Bridgewell for fraud, fraud by nondisclosure, violations of the Texas Deceptive Trade Practices Act (DTPA), and breach of the implied warranties of merchantability and fitness for a particular purpose. They did not plead a cause of action for breach of contract.

On June 24, 2016, LP filed a notice of removal to United States district court. While in federal court, LP filed a motion to dismiss Newport and Western Rim's claims. LP contended that Newport and Western Rim's tort and statutory claims failed as a matter of law because their complaints regarding the OSB materials fell under the written warranty.

On July 22, 2016, Newport and Western Rim filed a motion to remand. Newport and Western Rim requested a stay of the litigation while the motion to remand was pending. LP, Richmond, and Bridgewell agreed to the stay. In its order of March 31, 2017, the federal district court remanded the case to the trial court upon concluding that the parties were not diverse. Back in the trial court, Newport and Western Rim amended their petition to add causes of action against some or all of the defendants for negligence, gross negligence, negligent misrepresentation, aiding and abetting and joint enterprise, and conspiracy. Bridgewell had previously filed cross-claims against LP for indemnification and contribution, and against Richmond for breach of contract, indemnification and contribution.

In the months following remand, Newport, Western Rim, Richmond, and LP moved to compel arbitration. On May 11, 2017, LP filed a motion to compel arbitration and to stay the trial court proceedings. On August 17, 2017, Richmond filed a separate motion to compel arbitration. Thereafter, on October 11, 2017, Newport and Western Rim filed a motion to compel arbitration, albeit under a different arbitration agreement. The record reflects that various combinations of the

parties agreed to arbitrate with each other under several different agreements, but LP and Richmond rely only on the arbitration provision in LP's warranty in this appeal. Consequently, we limit our review to that provision.

In its motion to compel arbitration, LP asserted that while Newport and Western Rim did not assert a legal cause of action for breach of warranty, the factual allegations asserted by them necessarily relied on the warranty, which contained a binding arbitration agreement. The product's written warranty stated:

**5. REMEDIES**

**This section provides for the sole remedy available to the Owner from LP for any Product nonconformance.**

a.     If any nonconformance covered by Section 1(a) or 1(b) of this warranty or any implied warranty is confirmed, LP, at its option, will repair or replace the non-conforming Product together with any affected surface materials, including reasonable cost of labor.

b.     Any dispute concerning the meaning or applicability of the warranty shall be submitted to binding arbitration under the Commercial Arbitration Rules of the American Arbitration Association. The arbitration shall take place before a single arbitrator, the jurisdiction of the arbitrator over the dispute shall be exclusive, and the decision of the arbitrator shall be binding on the parties and not subject to appeal and shall be enforceable in any court having competent jurisdiction.

Newport and Western Rim responded, arguing that LP's motion should be denied because (1) they did not sign an arbitration agreement with LP, (2) there was no evidence they had effective notice of the arbitration clause, (3) there was no evidence they intended to accept and be bound by the arbitration clause, (4) the agreement was unconscionable, (5) LP waived its right to arbitrate by substantial

invocation of the judicial process to Newport and Western Rim's detriment, and (6) their claims did not fall within the limited warranty or the arbitration agreement. In the alternative, Newport and Western Rim requested a jury trial "to determine whether a valid agreement to arbitrate exists pursuant to the FAA."

The trial court heard the parties' competing motions to compel arbitration on November 11, 2017, but did not rule on them until a year later, on December 12, 2018. The court granted LP's and Richmond's motions and compelled Newport and Western Rim's claims and Bridgeport's cross-claims[2] against LP and Richmond to arbitration under the arbitration provision contained in LP's written warranty for the OSB. The court denied Newport and Western Rim's motion as to their claims against LP and Richmond.

Instead of proceeding with their claims in arbitration, Newport and Western Rim filed a motion to reconsider the trial court's order compelling arbitration. The motion was filed on February 12, 2019, and heard on May 10, 2019, but the court did not rule on it until almost two years later. The appellate record does not reflect any activity in the case in the interim.

On March 16, 2021, the trial court granted Newport and Western Rim's motion to reconsider. LP and Richmond then filed a motion to reconsider that order.

---

[2] The court's order refers to Bridgewell's "counterclaims against LP and Richmond," but Bridgewell's pleadings against its co-defendants stating claims "arising out of the transaction or occurrence that is the subject matter of the original action or of a counterclaim therein" are "cross-claims" under civil procedure rule 97(e). TEX. R. CIV. P. 97(e) ("Cross-Claim Against Co-Party").

–6–

Newport and Western Rim responded, this time denying the existence of any agreement to arbitrate with LP and Richmond. Bridgewell also responded, arguing that LP had waived arbitration by its activity in federal court.

The court heard LP and Richmond's motion to reconsider and denied it on May 7, 2021. The court vacated its prior order compelling arbitration and denied LP and Richmond's motion to compel arbitration. The case returned to the court's trial docket. This appeal followed.

### ISSUES AND STANDARDS OF REVIEW

In two issues, LP and Richmond contend the trial court erred by denying their motion to compel arbitration because (1) Newport and Western Rim's claims were subject to a valid and enforceable arbitration agreement because they sought and obtained the benefits of the warranty, which contained an arbitration provision, and (2) LP did not waive its right to arbitrate.

We review the denial of a motion to compel arbitration for an abuse of discretion, deferring to the trial court on factual determinations that are supported by the evidence and reviewing legal determinations de novo. *Henry v. Cash Biz, LP*, 551 S.W.3d 111, 115 (Tex. 2018); *Perry Homes v. Cull*, 258 S.W.3d 580, 598 (Tex. 2008); *Sidley Austin Brown & Wood, LLP v. J.A. Green Dev. Corp.*, 327 S.W.3d 859, 863 (Tex. App.—Dallas 2010, no pet.). Whether a party waived its right to arbitrate is a question of law that we review de novo. *Henry*, 551 S.W.3d at 115.

Because the trial court did not issue findings of fact or conclusions of law to explain its denial of the motion to compel arbitration, we must uphold the trial court's decision on any appropriate legal theory urged below. *Bonded Builders Home Warranty Ass'n of Tex. v. Rockoff*, 509 S.W.3d 523, 531–32 (Tex. App.—El Paso 2016, no pet.).

## DISCUSSION

The parties agree that the Federal Arbitration Act (FAA) applies to their dispute. *See* 9 U.S.C. §§ 1–16. A party seeking to compel arbitration must first establish that there is a valid arbitration agreement. *In re AdvancePCS Health, L.P.*, 172 S.W.3d 603, 605 (Tex. 2005) (per curiam) (orig. proceeding). The strong presumption favoring arbitration arises only after the party seeking to compel arbitration proves that a valid arbitration agreement exists. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003).

The party alleging an arbitration agreement must present summary proof that the dispute is subject to arbitration, and the party resisting arbitration may contest the opponent's proof or present evidence supporting a defense to enforcement. *See In re Weekley Homes, L.P.*, 180 S.W.3d 127, 130–31 (Tex. 2005) (original proceeding) (under the FAA, courts decide gateway matters such as whether valid arbitration agreement exists, applying Texas procedural rules that call for determination by summary proceedings). Here, LP and Richmond offered proof of the arbitration provision in the "25-Year Transferable Limited Warranty," arguing

–8–

that it binds Newport and Western Rim even though they did not sign it. LP and Richmond also argued that they did not waive their right to arbitrate by removing the case to federal court, and filing a motion pursuant to Federal Rule 12(b)(6) in the federal court.

We first address whether the trial court erred by concluding that Newport and Western Rim are not bound by the arbitration provision in LP's warranty, the only provision at issue in this appeal. We then consider whether the trial court erred by concluding that LP and Richmond waived their right to arbitrate.

1. **Newport and Western Rim Sought to Derive a Direct Benefit from the Warranty that Contained a Valid and Enforceable Arbitration Agreement.**

Neither Newport nor Western Rim signed the arbitration agreement that is contained in the product warranty. However, that does not end the inquiry regarding whether the arbitration agreement is binding on them. Non-signatories may be bound to an arbitration clause in accordance with general rules of state contract law, agency law, or equity. *SIG-TX Assets, LLC v. Serrato*, No. 05-18-00462-CV, 2019 WL 1771301, at *3 (Tex. App.—Dallas Apr. 23, 2019, no pet.) (mem. op.).

Here, LP and Richmond rely on the equitable doctrine of "direct-benefits estoppel" in support of their argument that Newport and Western Rim are bound by the arbitration provision in the warranty. "Direct-benefits estoppel applies to parties who seek to derive a direct benefit from a contract with an arbitration agreement." *Id.* (internal quotation omitted). If "the non-signatory's claims (and thus the

defendant's liability) arise solely from the contract or must be determined by reference to it," or if "the non-signatory deliberately seeks and obtains direct and substantial benefits from the contract containing the arbitration clause, irrespective of whether the non-signatory's claims are based on the contract," then direct-benefits estoppel may apply. *Id.* Estoppel "prevents a party from insisting upon his strict legal rights when it would be unjust to allow him to enforce them." *In re Weekley Homes, L.P.*, 180 S.W.3d at 133 (internal quotation omitted).

In *Jody James Farms, JV v. Altman Group, Inc.*, 547 S.W.3d 624 (Tex. 2018), the court explained:

> Simply put, a person cannot have his contract and defeat it too. When a claim depends on the contract's existence and cannot stand independently—that is, the alleged liability arises solely from the contract or must be determined by reference to it—equity prevents a person from avoiding the arbitration clause that was part of that agreement. But when the substance of the claim arises from general obligations imposed by state law, including statutes, torts and other common law duties, or federal law, direct-benefits estoppel is not implicated even if the claim refers to or relates to the contract or would have arisen "but for" the contract's existence.

*Id.* at 637 (internal citations, quotations, and footnotes omitted). And in *In re Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 195 S.W.3d 807, 816 (Tex. App.—Dallas 2006, orig. proceeding), we explained that "[i]n order to be compelled to arbitrate under an agreement to which it was not a party, the non-signatory must be 'seeking the benefits' of [the contract] by seeking to enforce its terms."

Newport and Western Rim contend they are not bound by the arbitration agreement because they had no knowledge of the warranty's terms. However,

Newport and Western Rim received the OSB materials in pallet units covered by a "protective shroud" stamped with the words "25-Year Transferable Limited Warranty" on both sides. The shroud also displayed LP's customer support number, where callers could receive a full copy of LP's written warranty. Further, LP's promotional material for the flooring, later quoted by Hiles, included a logo advertising the warranty. Next to the logo were the words, "See full warranty details at LPCorp.com or call 1-888-820-0325." The "Product" page on LP's website references and contains a link to the written warranty.

Mr. Hiles, on behalf of Newport and Western Rim, complained that he purchased LP's products because he relied on the representations and warranties made on LP's website and published literature. Newport filed a claim with LP to exercise its rights under LP's warranty, using LP's claim form. In later correspondence, Newport demanded "that LP stand by its representations and warranties and pay for the replacement of its faulty products."

Accordingly, Newport and Western Rim's claims arose directly from the contract's warranty provision, under which LP agreed to repair or replace product that exhibited delamination, did not perform "as reasonably required of a structural flooring material," or did not meet designated manufacturing standards. Because LP's liability arises from this provision and "must be determined by reference to it," Newport and Western Rim's claims must be arbitrated. *In re Weekley Homes, L.P.*, 180 S.W.3d at 132.

In *Weekley Homes*, the non-signatory sought "substantial and direct benefits" when she demanded extensive repairs to the home she lived in, and when she requested and received reimbursement for expenses incurred while repairs were made. *Id.* at 133–34. She obtained "these substantial actions from Weekley by demanding compliance with provisions of the contract," so she could not avoid the contract's arbitration clause. *Id.* at 133; *see also Meritage Homes v. Mudda*, No. 05-18-00934-CV, 2019 WL 2865270, at *3 (Tex. App.—Dallas July 3, 2019, no pet.) (mem. op.) (trial court abused its discretion by denying motion to compel arbitration where plaintiffs were seeking benefits from contract's warranty provision "while simultaneously attempting to avoid its arbitration provision").

We conclude Newport and Western Rim are bound by the arbitration clause in the "25-Year Transferable Limited Warranty" because LP and Richmond's liability arises from the alleged failure of the product to meet the standards promised in the warranty. Although Newport and Western Rim carefully pleaded only tort and statutory claims, those claims "depend[ ] on the contract's existence." *Jody James Farms, JV*, 547 S.W.3d at 637. The claims "cannot stand independently—that is, the alleged liability arises solely from the contract or must be determined by reference to it." *Id.* (internal quotation omitted). Consequently, "equity prevents [Newport and Western Rim] from avoiding the arbitration clause that was part of that agreement." *Id.*

We further conclude, however, that Bridgewell cannot be compelled to arbitrate its cross-claims against LP and Richmond under the arbitration agreement in LP's warranty. That provision requires arbitration of "[a]ny dispute concerning the meaning and applicability of the warranty" for "any Product nonconformance." Bridgewell has pleaded cross-claims (1) against LP for statutory and common law indemnity and for contribution, and (2) against Richmond for breach of contract, indemnity, and contribution. These claims, unlike Newport and Western Rim's, do not depend on the "meaning and applicability" of LP's warranty. Instead, they arise from other contractual or legal obligations Bridgewell contends LP and Richmond have undertaken.

Therefore, the trial court did not err in its original ruling compelling arbitration, but subsequently erred by (1) granting Newport and Western Rim's motion to reconsider, (2) returning the case to its trial docket, and (3) denying LP and Richmond's motion to reconsider those subsequent rulings. We sustain LP and Richmond's second issue with respect to the claims asserted against them by Newport and Western Rim. However, we affirm the trial court's order to the extent that it denied LP and Richmond's motion to compel Bridgewell's cross-claims to arbitration.

## 2. LP and Richmond Did Not Substantially Invoke the Litigation Process.

Newport and Western Rim argue that even if the arbitration provision is applicable, LP and Richmond waived their right to enforce it because they

substantially invoked the litigation process. A party waives the right to compel arbitration by substantially invoking the judicial process to the other party's detriment or prejudice.[3] *Perry Homes*, 258 S.W.3d at 589–90; *Holmes, Woods & Diggs v. Gentry*, 333 S.W.3d 650, 654 (Tex. App.—Dallas 2009, no pet.). There is a strong presumption against waiver of arbitration. *Perry Homes*, 258 S.W.3d at 590; *see also RSL Funding, LLC v. Pippins*, 499 S.W.3d 423, 430 (Tex. 2016) (per curiam) (party asserting waiver "bears a heavy burden of proof").

Before filing a motion to compel arbitration, LP and Richmond took the following actions in litigation: (1) LP timely removed the case to federal court; (2) LP filed a motion to dismiss under federal rule of civil procedure 12(b)(6); (3) LP and Richmond served responses to initial disclosures required under the federal rules of civil procedure; and (4) LP responded to requests for production Newport had served in state court before removal. We conclude that Newport and Western Rim failed to establish that LP and Richmond substantially invoked the judicial process.

The substantial-invocation element requires the court to consider the totality of the circumstances. *Perry Homes*, 258 S.W.3d at 591. Relevant factors include:

- whether the party seeking to compel arbitration is a plaintiff or a defendant in the lawsuit;

- when the party knew of the arbitration clause;

---

[3] Because appellees failed to establish that appellants substantially invoked the judicial process, we need not consider whether a party is required to establish prejudice in light of *Morgan v. Sundance, Inc.*, 142 S. Ct. 1708, 1714 (2022) ("Section 6 instructs that prejudice is not a condition of finding that a party, by litigating too long, waived its right to stay litigation or compel arbitration under the FAA").

- how long the party waited before seeking arbitration and any reasons for the delay;

- how much discovery has been conducted, who initiated it, whether it related to the merits rather than arbitration or standing, and how much of it would be unavailable or useful in arbitration;

- whether the party sought judgment on the merits;

- whether the party asserted affirmative claims for relief in court;

- the amount of time and expense the parties have expended on litigation;

- whether judicial activity would be duplicated in arbitration; and

- when the case was to be tried.

*RSL Funding*, 499 S.W.3d at 430; *G.T. Leach Builders, LLC v. Sapphire V.P., LP*, 458 S.W.3d 502, 512 (Tex. 2015); *Perry Homes*, 258 S.W.3d at 591–92. Generally, no single factor is dispositive. *RSL Funding*, 499 S.W.3d at 430. Although substantial invocation must be decided on a case-by-case basis, the *Perry Homes* court suggested the element would be satisfied if the movant conducted full discovery, filed motions going to the merits, and sought arbitration only on the eve of trial. *Perry Homes*, 258 S.W.3d at 590.

LP and Richmond moved to compel arbitration one year after Newport and Western Rim filed suit. However, "mere delay in moving to compel arbitration is not enough for waiver." *Richmont Holdings, Inc. v. Superior Recharge Sys., L.L.C.*, 455 S.W.3d 573, 576 (Tex. 2014) (per curiam) (citing cases in which eight-month and two-year delays were insufficient to establish waiver).

In the interim, LP and Richmond removed the case to federal court and sought to dismiss Newport and Western Rim's claims for deceptive trade practices, breach of implied warranties, fraud, and fraud by non-disclosure on the ground that "[t]he Written Warranty governs the relationship between Plaintiffs and LP and it effectively limits Plaintiffs' claims and remedies." LP and Richmond argued that "Plaintiffs elected not to assert [a] breach of express warranty claim," instead bringing "causes of action that do not apply, are expressly disclaimed by the Written Warranty, barred by the economic loss doctrine, and unsupported by facts sufficient to state a claim."

In *G.T. Leach Builders, LLC*, 458 S.W.3d at 513, the court explained that "[a] party's litigation conduct aimed at defending itself and minimizing its litigation expenses, rather than at taking advantage of the judicial forum, does not amount to substantial invocation of the judicial process." The court cited a "purely defensive action to preserve [a defendant's] right of removal" as an example of an action that did not constitute substantial invocation of the judicial process. *Id.* (citing *Rodriguez v. Transnave Inc.*, 8 F.3d 284, 288 (5th Cir. 1993)).

LP and Richmond also agreed to stay the federal court proceedings pending Newport and Western Rim's motion to remand. As the supreme court observed in *In re Service Corporation International*, 85 S.W.3d 171, 174 (Tex. 2002) (per curiam) (orig. proceeding), a party's "efforts in moving to dismiss and staying discovery were to avoid litigation, not participate in it." Further, LP and Richmond's

–16–

12(b)(6) motion did not seek disposition of the written warranty claim, the claim they sought to arbitrate. Rather, they contended Newport and Western Rim's claims failed as a matter of law because they were covered by a written warranty claim, which was not asserted.

The parties served the initial disclosures required under the federal rules and LP responded to requests for production Newport served in state court before removal. "Responding to discovery and simply being named in the lawsuit while discovery is ongoing do not amount to waiver. To the contrary, we have declined to find waiver even when the movant itself propounded written discovery." *G.T. Leach Builders, LLC*, 458 S.W.3d at 514. Further, and consistent with appellants' assertion that they did not invoke the litigation process, on June 23, 2017, the trial court granted LP and Richmond's motion to stay merits-based discovery and permit only arbitrability discovery, despite Newport and Western Rim's opposition.

Weighing the factors discussed above based on the totality of the circumstances, we conclude that Newport and Western Rim did not meet their burden to establish LP and Richmond waived their right to compel arbitration by substantially invoking the judicial process. *See, e.g., RSL Funding, LLC*, 499 S.W.3d at 430. Accordingly, we sustain LP and Richmond's first issue.

## CONCLUSION

The trial court's May 7, 2021 order is affirmed as to Bridgewell's cross-claims against LP and Richmond for indemnity and contribution. The order is reversed as to all other claims and the case is remanded to the trial court for referral to arbitration.

/Maricela Breedlove/
MARICELA BREEDLOVE
JUSTICE

210330F.P05



## JUDGMENT

LOUISIANA PACIFIC
CORPORATION AND
RICHMOND INTERNATIONAL
FOREST PRODUCTS, LLC,
Appellants


No. 05-21-00330-CV        V.


NEWPORT CLASSIC HOMES,
L.P., WESTERN RIM INVESTORS
2014-3, L.P., AND BRIDGEWELL
RESOURCES, LLC, Appellees

On Appeal from the 199th Judicial
District Court, Collin County, Texas
Trial Court Cause No. 199-02044-
2016.
Opinion delivered by Justice
Breedlove. Justices Pedersen, III and
Garcia participating.


In accordance with this Court's opinion of this date, the trial court's May 7, 2021 order is **AFFIRMED** in part and **REVERSED** in part. We **AFFIRM** the order as to appellee Bridgewell Resources, LLC's claims against appellants Louisiana Pacific Corporation and Richmond International Forest Products, LLC for indemnity and contribution. We **REVERSE** the trial court's order as to all other parties and claims. We **REMAND** this cause to the trial court for referral to arbitration.

It is **ORDERED** that appellants Louisiana Pacific Corporation and Richmond International Forest Products, LLC recover their costs of this appeal from appellees Newport Classic Homes, L.P. and Western Rim Investors 2014-3, L.P.


Judgment entered April 19, 2023